GILLETTE SAFETY RAZOR CO. v. CLARK BLADE & RAZOR CO. et al.

(Circuit Court, D. New Jersey. May 18, 1911.)

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—SAFETY RAZOR.

The Gillette patent. No. 775,134, for a razor having a detachable blade of such thinness and flexibility as to require external support to give rigidity to its cutting edge, was not anticipated, and discloses invention; also *held* infringed by the device of the Clark patent, No. 933,020.

In Equity. Suit by the Gillette Safety Razor Company against the Clark Blade & Razor Company and others. On final hearing. Decree for complainant.

M. B. Philipp. James Q. Rice, Thomas W. Pelham, and Clifford E. Dunn, for complainant.

Warren B. Hutchinson, for defendants.

CROSS, District Judge. The validity and infringement of patent No. 775,134 issued November 15, 1904, to one King C. Gillette, and by him duly assigned to the complainant, is in controversy in this suit. The patent contains 30 claims, of which, however, only 2, 7, 9, 10, 11, 17, 18, 19, 20, 23, 26, and 29 are involved. They are as follows:

"2. As a new article of manufacture, a detachable razor-blade of such thinness and flexibility as to require external support to give rigidity to its cutting edge."

"7. In a razor, the combination with a flexible blade of a holder comprising a handle, means for supporting the blade and giving rigidity to its cutting edge, and means for detachably securing the blade thereto."

"9. In a razor, the combination with a flexible blade of a holder comprising a handle, a backing adapted to support said blade and give rigidity to its cutting edge, and means for detachably securing the blade thereto.

"10. In a razor, the combination with a flexible blade of a holder comprising a guard, a handle, a backing adapted to support said blade and give rigidity to its cutting edge, and means for detachably securing the blade thereto.

"11. In a razor, the combination with a flexible blade of a holder comprising a rigid backing adapted to support said blade and give rigidity to its cutting edge, a guard, and means for detachably clamping the blade between said backing and guard."

"17. In a razor, the combination with a blade having two opposite cutting edges, of a guard having two opposite edges co-operating with said cutting edges respectively, means for clamping said blade thereto, and a handle located midway between the edges of the guard.

"18. In a razor, the combination with a blade having two opposite cutting

edges, of a holder comprising a backing, a guard having two opposite edges co-operating with said cutting edges respectively, means for clamping the blade between said backing and guard, and a handle located midway between the edges of said guard and symmetrically arranged with respect thereto.

"19. In a razor, the combination with a blade having two opposite cutting edges, of a holder comprising a central handle, a guard, a backing, and means operated by the handle for clamping the blade between the guard and backing.

"20. In a razor, the combination with a perforated blade having two opposite cutting edges, of a holder comprising a guard having two opposite edges co-operating with said cutting edges respectively, a backing, a handle, and clamping means passing through said blade."

"23. In a razor, the combination with a flexible blade having two opposite cutting edges, of a holder comprising a backing, adapted to support and give rigidity to said blade near its cutting edges, a double guard, a handle, symmetrically arranged with respect to the blade, and means for detachably securing the blade between the backing and the guard."

"26. In a razor, the combination with a perforated blade having two opposite cutting edges, of a holder comprising a handle, a backing, a double guard, and clamping and positioning means passing through the perforations in the blade."

"29. In a razor, a holder comprising a guard having opposite longitudinal edges formed to co-operate with a double-edged blade, means for holding a blade in proper relation to said guard, and a handle secured to said guard between the longitudinal edges and symmetrically arranged with respect thereto."

In the specification of the patent the patentee described the nature and object of his invention in the following language:

"A main object of my invention is to provide a safety razor in which the necessity of honing or stropping the blade is done away with, thus saving the annoyance and expense involved therein, and to this end I make the blade of my razor of very thin sheet steel, thereby getting rid of a large amount of metal which has heretofore been required to give the blade the proper amount of strength and rigidity and I secure this blade to a holder so constructed as to provide a rigid backing and support for the blade, as well as a handle therefor, so that although my blade itself is readily flexible by reason of its thinness and lacks the rigidity of the ordinary razor blade, yet, when it is combined with its holder it receives a degree of rigidity sufficient to make it practically operative. Thus the material from which my blades are made need only be just thick enough to take a suitable edge, so that the blades require but a small amount of material, and can be ground very quickly and easily, and hence I am able to produce and sell my blades so cheaply that the user may buy them in quantities and throw them away when dull without making the expense thus incurred as great as that of keeping the prior blades sharp, and, moreover, will always have the cutting edge of his razor blade in the same perfect condition as that of a new blade. It will be understood, of course, that my blades are made of uniform size and are detachably combined with the holders, so that a purchaser need buy but one holder and can then readily substitute a sharp blade for a dull one whenever necessary.

"Other objects of my invention are to provide a holder adapted to receive a blade having two cutting edges, so that the life of a blade may thus be doubled, and also to provide a simple arrangement for adjusting the cutting edge or edges of a blade toward or from the guard to accommodate light or heavy growths of beard or to suit the skill and convenience of the user, and with the above ends in view I have devised a bladeholder which enables me to utilize the flexibility and elasticity of my blades in a very advantageous manner, my holder being also simple in construction and easily cleaned and having other advantages which will hereinafter appear."

From the above extract it will readily be seen that the Gillette razor differs widely from the old blades of the wedge, or V, shaped and

concave varieties, attached to the ordinary form of handle. Counsel for the complainant in their brief have given exceedingly interesting and instructive accounts of these earlier varieties of razors, as also of the method of making them; but for the purpose of this decision it seems unnecessary to consider such matters, since unquestionably the razor of the patent in suit differs so widely from them, and from everything in their class, that under no possible circumstances can they be considered as anticipations.

Attention will now be given to a consideration of the claims in issue, of which claim 2, covering the blade, constitutes the storm center, notwithstanding it is apparently simple and easily understood. It will be at once noted that the new article of manufacture thereby called for is not a safety razor blade, but a razor blade in general. Furthermore, that it is detachable and of such thinness and flexibility as to require external support to give rigidity to its cutting edge. Its flexibility, however, is a result of its thinness, for, as one of the complainant's experts says, "flexibility is merely the ear-mark or characteristic of thinness, the unavoidable attribute of the thinness which the patent sets forth." The point to be considered in determining whether this claim is valid depends upon whether razor blades, so thin and flexible as to require external support of the cutting edge, while in practical use, were or not old in the art. A number of patents intended to show the prior art in the respect mentioned cannot be considered as anticipations, for the reason that the date of Gillette's invention, as will be referred to later, is carried back of their respective dates of issue. Perhaps the chief citation requiring consideration is a British patent to Kelly, No. 1,136, 1880, in which the patentee in his provisional specification says of the blade of his razor, "that it is simply a piece of very thin steel, ground on one edge and can be instantly removed for sharpening." And in his complete specification, still speaking of the blade, he says "that it consists of a piece of this steel, ground to a cutting edge on one or both sides." His blade formed a part of a safety razor, of which, however, the evidence shows that only about 120 were ever manufactured. One of the razors of the commercial type of that patent is in evidence, and its blade does not meet the essential requirements of claim 2. It is true Kelly speaks of the blade as "thin" and "very thin"; but these terms are relative. It may indeed be thin and very thin, and yet not so thin as to be flexible. The drawing of the Kelly patent, although crude, nevertheless shows a blade of very considerable thickness, while its cutting edge appears to have a marked bevel on one side which would not, and could not, exist unless the metal of the blade had considerable thickness. From the evidence pertaining to this razor and the exhibit showing it, it would seem, moreover, that such a bevel was necessary in order to furnish the blade with a sufficient angle to form a cutting edge. Attempts were made by both parties, while the testimony was being taken, to fit the Gillette blade into the Kelly holder, but, when normally fitted therein, the blade did not have a sufficiently wide cutting angle to be of practical use. The cutting edge came into the plane of the frame so as to be inaccessible to the face. Referring again to the dia-

gram of the Kelly blade, it further appears therefrom that it is several times thicker than the Gillette blade, as thick, indeed, as the wire of the blade holder itself. The blade of the patent in suit varies from $^3/_{1000}$ to $^6/_{1000}$ of an inch in thickness, while the complainant's expert says that the Kelly blade is at least $^1/_{10}$ of an inch thick. That blade unquestionably has the characteristic of rigidity rather than of flexibility, and, as already said, it manifestly had to be of considerable thickness and rigidity in order to fit the holder, and be adapted to practical use. Furthermore, a statement appears in the record, made by a son of Kelly, the patentee, in which he says that the blade of his father's patent was designed to have a thick back and to be rigid so as not to require any support. Moreover, the word "thin," as used by Kelly, suggests no standard of comparison, and it would seem, therefore, but natural and reasonable to suppose that he intended thereby to signify thinness in contrast with the thickness of the standard blade, as shown by the then existing art, and that, notwithstanding his use of the word "thin," he lacked any conception of a blade like that of Gillette, thin to the point of extreme flexibility. It would therefore, under the circumstances, be unjust to regard the Kelly blade, which has proved to be of doubtful utility, as an anticipation of the Gillette blade.

Sixty-three prior uses and over 120 patents, foreign and domestic, were set up in defendant's answer. No attempt was made to prove any of the prior uses, while of the patents considerably less than one-fifth are relied on, and among them it will be found that a considerable proportion are for hoof-paring tools, pruning shears, lathe tools, cutter heads, and scraping tools, devices belonging so clearly and completely to a nonanalogous art as to render them unworthy of special consideration in this connection. Of the others it may be said in general, as it was said by the Circuit Court of Appeals for the First Circuit, speaking through Judge Putnam, in Forsyth v. Garlock, 142 Fed. 461, at page 463, 73 C. C. A. 577, at page 579:

> "The respondents cite over 40 patents alleged to either anticipate or narrow the art. Our general observation as to these is that the citation of so many patents by a respondent in an infringement suit sometimes tends, as we have several times said, not so much to weaken the complainant's position as to strengthen it, by showing that the trade had long and persistently been seeking in vain for what the complainant finally accomplished."

Of the patents which will be considered, there is a type of razor, known in the case as the "Pluemacher," wherein much thinner stock can be used, and is used, in forming the blade, than in the wedge shaped or concave razor blade of the ordinary kind. The blades of this type are undoubtedly thinner than those of the old form, but in applying the word "thin" to them the term must again be used relatively. Not one of them had or required any support of the blade at its cutting edge. They are all provided with some form of a band or bead on the edge opposite the cutting edge, which band or bead may, to some slight degree, stiffen the back of the blade, but does not give rigidity to the cutting edge, which is of sufficient thickness to have inherent rigidity. Blades such as have just been referred to are

shown by Freeman, No. 135,793, 1873; Erdmanski, No. 155,643, 1874; Slayton, No. 220,438, 1879; Pluemacher, No. 221,352, 1879; Laufer, No. 443,773, 1890; the Evertz German patent No. 70,372, 1893; Schnabel, 610,770, 1898; and the Askam British patent, No. 3,771, 1900. Of those patents the latter two, as will presently appear, are subsequent to the date of the Gillette invention, but, irrespective of that fact, it may be said of them all that they do not refer to or disclose a thin flexible blade like that of the patent in suit, a blade which of necessity requires support in order to be of practical use. The following quotation from the testimony of one of complainant's experts is, moreover, pertinent and applicable to the above and other razors of that class:

"No one of the patents specifies how thin or how thick the blade is to be, nor suggests in any way that there is anything unusual about it, other than its separability from the back, and, in my opinion, it is obvious that all these patents show, and all that they could possibly suggest, is the construction of an ordinary V-shaped razor blade separate from the thick back or stropping guide. So far from suggesting the Gillette invention of a blade stamped out of sheet steel and of such thinness as to be a mere vehicle for an edge, without the stiffness to support it in shaving; those prior art patents showing regular razor blades made in two parts with the cutting part having all the usual rigidity and doing all the supporting of the cutting edge, lead entirely away from, and not toward, such invention, and serve to emphasize the essential novelty and inventive character of the blade of claim 2, in my opinion."

The Curley British patent, No. 3,879, of 1889, is another razor of the Pluemacher type. It has a flat blade of about the ordinary length with a bead on the back. It has, moreover, a reversible, detachable guard over the cutting edge, which, if used, changes the razor to the safety type. The guard, however, while of sufficient thickness to be self-supporting, does not, as any one who has seen the razor must know, support the cutting edge. Hence its blade is also unlike that of the patent in suit. The Deasey patent, No. 237,498, of 1881, requires but slight consideration. The defendant's expert in speaking from his standpoint of its resemblance to the Gillette blade says:

"We do not consider the transverse flexibility or elasticity of the blade which is found in the patent in suit, but are not found in Harrington or Deasey."

That is to say, by leaving out of consideration the distinguishing characteristics of the blade of claim 2, he finds the Deasey blade would resemble it.

The Rein patent, No. 358,751, of 1887, the Patridge patent, No. 361,234, of 1887, the Crookes patent, No. 429,605, of 1890 and the Scharf patent, No. 512,125, 1894, with the exception of the Crookes patent, all show the old form of concave blade. The Crookes blade is not described at all or at least not with any particularity. The Fisk patent, No. 373,395, 1887, seems to have a wedge-shaped blade. The specification, however, has but little to say of the blade. It deals rather with the manner of holding it and the means provided for guarding it from cutting the face when in use. The drawings, in so far as they show the blade, show that it is of a considerable degree of thickness, with a back independently attached thereto. There are other

patents which will not be specially considered, for the reason that they are either not deemed of sufficient importance, or are subsequent to the date of the Gillette invention. They have, however, all been examined, and no one of them in my judgment discloses the flexible blade described by claim 2. None of them is so thin and flexible as to require or be furnished with support at the cutting edge, and this statement is made notwithstanding the fact that one or two patents in the prior art do show a blade which has been artificially stiffened by solder or white metal permanently fastened to its sides, thus evidently securing a thick wedge-shaped blade by the use of a substance cheaper than steel. The Gillette blade, if it had but a single cutting edge, and the edge opposite thereto were supported by a rib, thus making the blade somewhat after the Pluemacher type, would nevertheless be practically useless as a razor. Its blade, almost as thin and pliable as a sheet of legal cap paper, would, notwithstanding the rib, assuredly spring and bend so as to destroy its practical utility. Hence, upon consideration of the entire evidence, I regard the blade of claim 2 as a new and useful article of manufacture, that the subject-matter of the claim has not been anticipated, and that the claim is valid.

That defendant's blade comes within the terms of claim 2, if broadly construed, is admitted by defendant's expert after some hesitancy, notwithstanding he had formerly denied it, as will appear from the following short extract from his testimony:

"As the blade of defendant's razor is of such thinness and flexibility as to require an external support when it is used practically for shaving, it would in my opinion come within the claim, if the claim were construed broadly."

Before referring to the other claims in issue, it is important to ascertain when, according to the evidence, Mr. Gillette made his invention. An examination of the testimony shows conclusively that it was made in 1895, and, without going greatly into detail, it may be said in general that his own testimony to that effect is corroborated by at least five independent witnesses, who unqualifiedly say that Gillette disclosed it to them in the summer or fall of that year. Furthermore, one of the witnesses says that during that period she was shown by Mr. Gillette a small wooden model of his invention. Mr. Gillette has also produced a number of sketches and drawings showing his invention, the most of which were made at that time. Of them, however, one was marked 1897, and proved to have been made during that year, and another in 1899. There is also in evidence a written memorandum made by Mr. Gillette, descriptive of his invention, which he swears was made in view of an early application for a patent which he then had in mind to make, but which, however, he did not for various reasons make until some time afterward. It was during this period that he himself, as he testifies, unsuccessfully attempted to harden and form some of his razor blades. After his failure, he went to an expert German cutler by the name of Franz for the purpose of securing his aid. That this was prior to February 10, 1897, is made certain because of an explosion which occurred at that time in a gun store under the shop of Franz. When Gillette first went to Franz, he had with him a copy of his original razor holder, of which Franz made a copy. Several

card patterns of the blade made at that time are also in evidence, which it is shown were used by Franz in making blades for the Gillette holder. Franz corroborates the foregoing testimony of Mr. Gillette in every respect. After a careful examination of the evidence, I am satisfied that Mr. Gillette made and disclosed his invention in the summer or fall of 1895, and that he constructed useable razors embodying the essential features of the patent in suit at least as early as February, 1897. He met with great difficulty, however, even with the aid of Franz, in making satisfactory blades, and many and protracted experiments were necessary before they were successfully manufactured. For that and other reasons, but chiefly perhaps because he desired to get his invention in the best form before applying for a patent, he delayed making any application therefor until August, 1899. His application as then made was allowed June 28, 1901, but before the expiration of the six months allowed by law for making the final payment therefor the application was abandoned. There was filed, however, simultaneously with the request to abandon that application another for the same invention. This was done for the reason, as given by Mr. Gillette, that for some time he had been endeavoring to obtain capital from different parties wherewith to manufacture his razor, in which effort he was finally successful. The parties, however, who agreed to advance him the money, insisted that the patent should be taken out by their own attorneys, and to this he assented. Accordingly the first application was abandoned pursuant to the following request made to the Commissioner of Patents:

"The above application is hereby abandoned in favor of another application embodying the same invention and filed herewith, this abandonment being of said prior application only and not of the invention shown and described therein or of any part of said invention, and being made without prejudice to any rights secured or sought to be secured by said prior application. And it is hereby requested that the application filed herewith may be substituted in the files of the patent office for said prior application, and regarded as a continuation thereof."

The foregoing request was granted. The new application was, however, as already stated, filed simultaneously with the petition to abandon the earlier, and the patent in suit was subsequently issued on the second application. There is nothing in this action which was illegal or questionable. He did not abandon his invention, but simply withdrew his first application, and in doing so expressly reserved all rights in his invention. This procedure was proper. Hayes-Young Tie Plate Co. v. St. Louis Transit Co., 137 Fed. 80, 82, 70 C. C. A. 1. Both applications were pending in the Patent Office at the same time, and both related to the same invention. The commissioner gave the patentee the benefit of his first application by treating the date of the filing of the second application as of the date of the filing of the first.

Concerning the other claims in issue, it is necessary to say but little. All of them, except claim 29, are combination claims. Claim 29 is for the razor holder. These claims are unquestionably valid, and their validity is scarcely disputed. There is certainly nothing in the prior art which discloses the combination called for by the combination claims, nor any holder of the character indicated by claim 29. The

defendant's experts while attacking the validity of claim 2 cite no device or devices which effect or anticipate any of the other claims. It is, however, claimed on behalf of the defendant that those claims when properly construed are not infringed by the defendant's device. Under the circumstances, no attempt will be made to review again the patents which have been referred to above. The patent in suit is of the greatest utility, and has had an enormous sale. This of itself, if the case were doubtful, would constitute an important factor in its determination, but the patent is well able to stand without such aid. It disclosed a novel blade and a novel holder, and their combination in a' novel manner.

Upon the question of infringement, it may be said that a comparative examination of the defendant's device with the complainant's shows that the only difference between them worthy of serious comment is that the backing supporting the Gillette flexible blade is concave, whereas in the defendant's it is flat. By concaving the back, which, according to the specification of the patent in suit, is the better form, the flexibility of the blade is taken advantage of. Notwithstanding this, however, the same specification clearly indicates that the blade may be otherwise supported and used. For instance, after describing the flexible blade of the patent, the patentee proceeds to say:

"I secure this blade to a holder so constructed as to provide a rigid backing and support for the blade, as well as a handle therefor, so that although my blade itself is readily flexible by reason of its thinness, and lacks the rigidity of the ordinary razor blade, yet when it is combined with its holder, it receives a degree of rigidity sufficient to make it practically operative."

This language clearly indicates the patentee's intention to secure support for the blade by a rigid backing without regard to the shape of that backing. Again, in another place in the specification, he uses this language:

"The plate 8 may be omitted from the guard 5 if desired, in which case the blade will be supported directly on the shoulders 12, as shown in Fig. 4, but when the plate is to be bent by the act of clamping it to the holder, I prefer to employ said plate in order to provide bearing for the inner surface of the blade throughout its length."

This language likewise shows that the patentee contemplated the use of his blade in a flat as well as in a flexed position. The flat backing of the holder as used by the defendant is manifestly a mechanical equivalent for the curved backing adopted by the complainant in its commercial form of razor. The curved form would seem, as the patentee has suggested, to be the better form, but the defendant cannot escape infringement by simply substituting a flat backing which obviously performs the same function as the curved backing, and in substantially the same way. There are other differences between the devices of the complainant and the defendant, but they are so slight and unimportant as scarcely to require consideration. For instance, the complainant's blade has two positioning holes which engage positioning studs formed near the ends of the back of the razor, and a central hole for engaging the threaded stud which secures the clamping holder in place; while defendant's holder has two projections on the guard, and

the blade is provided with a long slot through which the clamping screw passes, while the ends of the slot fit over the guard projections. This slot of the defendant's blade when it is applied to the complainant's commercial form of holder exactly fits it. Indeed, the defendant advertises its blade as adapted to be used in the complainant's holder. There is, as already intimated, no real difference between the two devices, and any apparent differences are purely mechanical and evasive, and possibly designed to circumvent the claims of the patent in suit.

Notwithstanding what has just been said, I do not think that a decree should go against the individual defendants, as asked for by the complainant. The infringing device is being manufactured under patent No. 933,020 to Clark, issued in 1909, and while it is true that one of the individual defendants procured the above patent and assigned it to the corporate defendant, and that such corporation was formed for its manufacture and is controlled by the individual defendants, still they cannot be considered the willful and designing infringers that they might perhaps have been, were they manufacturing without the protection of a patent. At all events, there was a guise of legality in what they did. The proofs do not warrant an individual decree. If they were held to do so, then almost every case against a corporation would warrant a decree, not only against it, but against its stockholders, directors, and managers. For all that appears in this case the complainant will receive ample protection and relief by a decree against the corporate defendant. Such a decree in the usual form will be entered, with costs.