## ESSEX RAZOR BLADE CORP. *v.* GILLETTE SAFETY RAZOR CO.

No. 21. Argued October 15, 16, 1936.—Decided November 9, 1936.

*Mr. George E. Middleton,* with whom *Mr. C. M. Palmer* was on the brief, for petitioner.

*Mr. Henry R. Ashton,* with whom *Mr. Charles Neave* was on the brief, for respondent.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

The respondent makes and sells safety razors and blades. The petitioner makes and sells only blades. The

---

[9] *United States* v. *Constantine,* 296 U. S. 287, 293.

Gaisman patent No. 1,633,739, owned by the respondent, covers both safety razor blades and razors, and for the alleged infringement by petitioner of Claims 1 and 2 covering blades this suit was brought. The claims are so nearly alike that quotation of Claim 1 will suffice:

"A blade having a non-circular opening substantially centrally disposed to retain the blade in shaving relation to a guard member, said blade having means spaced from said opening to coöperate with a clamping member to retain the latter in shaving relation to the blade independent of the guard member."

The novelty claimed for the patented article is that the blade acts as a positioning device or key to maintain the cap, the blade itself, and the guard, in proper relation to each other for shaving.

The District Court dismissed the bill on the ground that the patent was void for want of invention.[1] The Circuit Court of Appeals reversed, holding that the patent disclosed invention and was infringed by the petitioner's blade.[2] The Circuit Court of Appeals for the Second Circuit has decided that a blade like the petitioner's in all important features does not infringe.[3] In view of the conflict certiorari was granted.

Safety razors of the Gillette type combine these elements: A guard, a cap or backing member, a blade, a handle, and means to clamp the blade in shaving position between the cap and the guard. King C. Gillette accomplished a major advance in the art when he conceived a double-edged blade so thin and flexible as to require external support to give rigidity to its cutting edge and a safety razor embodying such a blade. In 1904 he was awarded a patent, No. 755,134, for this invention. He

---

[1] 13 F. Supp. 505.
[2] 83 F. (2d) 541.
[3] *Gillette Safety Razor Co.* v. *Hawley Hardware Co.*, 64 F. (2d) 10.

claimed "as a new article of manufacture a detachable razor-blade of such thinness and flexibility as to require external support and give rigidity to its cutting edge." He made further claims of which the following may be taken as typical:

"In a razor, the combination with a perforated blade of a holder comprising a guard, a backing, a handle, and positioning and clamping means passing through the perforations in the blade."

His patent, which was sustained with respect to the claims both for the blade and for the razor,[4] expired years before the issue of that which is the subject of the present litigation. In Gillette's specifications and drawings the means disclosed for holding the blade in position between the guard and the cap are two metal arms secured to the base of the guard and turned upwards to pass through the guard near each end. The blade and the cap have slots through which these metal arms pass when the razor is assembled. The function of the arms is described thus: "To position the blade with respect to the guard and hold it against lateral movements." The patent also discloses that the cap and guard are to be clamped together upon the blade by a threaded post set in the centre of the cap passing through a hole in the centre of the blade and another in the centre of the guard and screwed into the end of the handle. In commercial practice Gillette substituted for the arms affixed to the guard two pins or posts set in the transverse median line of the cap equidistant from the centre. He then made his blade and guard with two corresponding holes so that in assembling the razor these posts or pins passed through the blade and the guard and held the blade in position when the handle was

---

[4] *Gillette Safety Razor Co.* v. *Clark Blade & Razor Co.,* 187 Fed. 149; affirmed in *Clark Blade & Razor Co.* v. *Gillette Safety Razor Co.,* 194 Fed. 421.

screwed upon the centre post of the cap to clamp the blade in shaving position. After the granting of the Gillette patent many others having to do with safety razors of a similar type were issued. These exhibited various means for fixing and holding a blade in position between cap and guard, although invention apparently was not claimed to consist in any such positioning device. In some, a protuberance was placed on the guard to fit into a slot in the blade and pass through that into an appropriate recess in the cap. In others pins were set in the guard to pass through holes in the blade and thence into sockets in the cap. Still others showed the same device as Gillette used commercially. Several showed slots cut in the end of the blade and cap to be engaged by pins or springs extending from the guard. In others, the procedure was reversed, the slots being in the end of the blade and guard to be engaged by pins or lugs set in the ends of the cap. In most of these patents, as in Gillette's combination, the device adopted locked together all three members, guard, blade, and cap. In Gaisman's construction the guard carries a non-circular protuberance and the blade has a hole cut into it to fit snugly over this protuberance. The blade also has notches in its ends or corners and the cap is provided with corresponding pins or lugs to engage these notches. The protuberance on the guard, although passing through and fixing the blade in position with reference to the guard, has no functional connection with the cap. On the other hand, the lugs on the cap which position the blade with respect to it do not engage the guard or have any functional connection with the latter. The advantages claimed for this method are that it renders assembly of the razor easier and also makes possible a more accurate location of the shaving edge of the blade relative to the edges of cap and guard, because, in the

old pin or post type, greater tolerances had to be allowed with consequent possibility of excessive shifting of the blade in relation to the other two members; or such tolerances had to be overcome in the manufacture of the parts, greatly increasing the cost of production. Thus it is said that, with the same manufacturing routine, the respondent's new so-called Goodwill razor, embodying the Gaisman construction, permits a possible shifting of the blade of not over three one-thousandths of an inch as compared with five one-thousandths of an inch in the old design.

Though the petitioner's blade closely resembles the Gaisman blade furnished by the respondent for use in its Goodwill razor, we lay to one side the inquiry whether the similitude is such as to constitute infringement, since we hold the patent invalid for lack of invention.

As already suggested, every safety razor consisting of a combination of guard, cap, blade, and clamping means must also provide means to keep the blade in position relative to the cap and guard. The means adopted have been various. Gillette resorted to the device of square rods or round pins fixed either to the guard or to the cap and slots or holes in the blade and the other member through which the rods or pins should pass to fix the blade in position. Gaisman fixed the blade relative to the guard by one set of lugs and slots and fixed it in relation to the cap by another set of lugs and slots. The choice was one between alternative means obvious to any mechanic; it did not have the quality of invention.

The judgment of the Circuit Court of Appeals is reversed and that of the District Court affirmed.

*Reversed.*

Mr. Justice Stone took no part in the consideration or decision of this case.