Booth, Chief Justice,
delivered the opinion of the court:
The plaintiff, Roy Knabenshue, sues to recover damages for an alleged infringement of his patent #858,875 granted July 2, 1907. The plaintiff’s action having been commenced on January 21, 1929, would have been barred under Section 156 of the Judicial Code. The Congress, however, by an *492 act approved May 3, 1928, confei’red jurisdiction upon the court to adjudicate the case irrespective of the statute of limitations. This special act appears in the preamble to the findings. No jurisdictional issue is raised and we need not set it forth again.
Plaintiff in his specifications states that he has “invented a new and improved tent.” The object of the invention is to eliminate center supporting poles which function in part to support the top of a tent and thereby leave the center portion “wholly unobstructed” and available as a hangar for airships, etc., as well as for use of stage or other shows.
Canvas tents are admittedly very old. The usual form -of construction ivas to support the middle ridge of the top cover with so-called center poles which elevated it to a ■considerable distance above the side ridges to form a structure of slanting character capable of excluding rain and ¡sunshine as well as adding rigidity to the same. The means of accomplishing such a structure were old and well known in the art'many years prior to 1929.
The plaintiff, engaged in ambulatory exhibition flights with a dirigible airship, desired a portable hangar for the •same, and the presence of center poles in customary tents not so used necessitated their removal. They manifestly, precluded the use of a small, tent for hangar purposes; an unobstructed central portion was essential.
Plaintiff substituted for the usual center poles unit two upright poles, disposed opposite each other and connected at their top ends by means of a cable or rope. Each pole extended through openings provided in the tent for the purpose-of permitting the pair of poles to extend above the central ridge of the top of the tent when the same was made ready for use. The use of one or more units of the devised supporting device is dependent upon the size of the tent.
In the center of the cross cable or rope a block and tackle is suspended and attached at this point to the top canvas of the tent and operated by suitable ropes guided in position by a pulley attached to each pole and extending downwardly along the poles to a fixed point near the ground. *493 By operating the block and tackle the central ridge of the tent was brought into the peak positions indicated in Fig. 2, Finding 7, by the letters D, A2, and A1.
At a fixed point somewhat below the top of each of two supporting poles a second block and tackle is attached, intended to support the sides of the tent where the poles pass through it. The letter I in Fig. 2 illustrates the position and functioning of the above element of the patent. Novelty is also claimed for this connection of the block and tackle with the tent. Letters H and A3, Fig. 4, illustrate the same. The illustration discloses that the lower pulley block 11 is attached to a loop of rope, the ends of which are fastened to the canvas cover or bail ring on opposite sides of the ring or pole opening A3.
Invention is said to be involved in this form of construction in that it avoids the possibility of any binding tendency around the opening in the canvas and thereby facilitates the erection of the tent. It is of course conceded that the form of construction disclosed in the specifications and patent claims does eliminate the necessity of using center poles to support the central ridge of a tent and results in an unobstructed central portion of the same.
The distinction bet-ween the exercise of mechanical skill and invention has been pointed out too frequently to be repeated. It is manifest from the specifications and claims of the patent in suit that every element of the same is old in the art. The mechanical difference between supporting the top cover and sides of a canvas tent by center poles without resorting to a block and tackle and doing precisely the same thing by attaching to poles a block or blocks and tackle, a well known mechanical device, is, we think, so obviously slight as to negative the exercise of invention.
Plaintiff’s patent does not in any respect alter the existing contour of canvas tents. It is true that the position and arrangement of supporting tent poles and means for erecting and lowering the tent take on in some degree a change from the customary modes, but it is seemingly a change in mode only, one that would suggest itself to those skilled in the art who desired an unobstructed interior of the tent.
*494 What the patent discloses is a change in the location of the old elements long used and available-in tent construction, so as to supply a supporting structure that will support the canvas of the tent in a way suitable for a particular use of the same.
The removal of the long practiced system of utilizing center poles to support the canvas of-circus and other tents where an unobstructed central portion thereof was not essential, by the adoption of a pole system predicated upon the application of support from different angles and by well known means, does not, we think, introduce into the art a distinctly new or improved tent. The old tent in its old form prevails. The plaintiff’s concept continues it, changing by relocation the same elements which have always served to support the structure.
In the case of Redgrave v. Singer, et al., 120 Fed. 306, 307, a case cited in defendant’s brief, the court approved the opinion of the examiners in chief of the Patent Office denying validity of plaintiff’s patent. It was held that a change in the placement of an element of an old device to a new place which fails to alter the functioning of the old device does not involve invention. The language of the examiners’ opinion is apropos:
There are some advantages which are incident to the use of the handle in the new place, such as its increased strength because of its shortness, the power being applied nearer to the block; and the countersinking of the handle protects it from blows, and enables closer packing of several boards together for transport. These are all advantages resulting solely from rearrangement, without any change or advantage in the functions of the apparatus for its purpose. Mere location of an old element of an old device in one or another position in the device, without change of function, has long been held to be entirely within the province of the skilled workman, and we see no reason why this change is a new invention.
In the case of the Essex Razor Blade Corp. v. Gillette Safety Razor Co., 299 U. S. 94, 98, the Supreme Court in the opinion said:
As already suggested, every safety razor consisting of a combination of guard, cap, blade, and clamping *495 means must also provide means to keep the blade in position relative to tbe cap and guard. Tire means adopted have been various. Gillette resorted to the device of square rods or round pins fixed either to the guard or to the cap and slots or holes in the blade and the other member through which the rods or pins should pass to fix the blade in position. Gaisman fixed the blade relative to the guard by one set of lugs and slots and fixed it in relation to the cap by another set of lugs and slots. The choice was one between alternative means obvious to any mechanic; it did not have the quality of invention.
In addition to what has been said, it is established as a fact that at least as early as July 1902 a traveling troupe of players giving shows in a tent, under the name of Moon Brothers, had constructed for them a tent embodying the elements of plaintiff’s patent, and it was commercially used by them in more than one locality in the United States.
The Moon Brothers’ tent exacted an unobstructed central portion to enable the erection of a stage upon which performances were given, and afford seating arrangements for audiences. It is true that to accomplish the purpose required but one double suspension unit instead of a multiple of the same in. case of a larger canvas, but the suspension unit used was similar in point of fact to plaintiff’s. Findings 19, 20, 21, and 22 are sustained by the record. In Slawson v. Grand Street Railroad Co., 107 U. S. 649, 654, the court said:
What is covered by the patent is simply the making of an aperture in the top of the fare-box and turning the rays of the head-lamp through it into the box by means of a reflector. In other words, it is the turning of the rays of light to the spot where they are wanted by means of a reflector, and taking away an obstruction to their passage. The facts of general knowledge of which we take judicial notice teach us that devices similar to this are as old as the use of reflectors. Taylor’s Ev., sect. 4, note 2; Brown v. Piper, ubi supra. The new application of them does not involve invention.
Plaintiff’s petition is dismissed. It is so ordered.
Whaley, Judge; Williams, Jmdge; Littleton, Judge; and GeeeN, Judge, concur.