## GENERAL ELECTRIC CO. v. YABLONSKY et al.

District Court, D. New Jersey.
May 26, 1938.

806

Howson & Howson, of New York City (Hubert Howson, Merrell E. Clark, and Alexander C. Neave, all of New York City, and John H. Anderson, of Cleveland, Ohio, of counsel), for plaintiff.

Paul J. Christiansen, of Newark, N. J. Angelo M. Pisarra, of Newark, N. J., and Francis J. Pisarra, of Bartlesville, Okl., of counsel), for defendants.

CLARK, District Judge.

The usual issue of anticipation by prior patents. The art, if it may be called an art, is the placing (positioning in the jargon of patent solicitors and their specifications) of electric light filaments for effective highway reflection.

The pertinent principle of physics is conceded:

"Conversely, when a wave originates at the focus of a parabolic mirror it is reflected as a rigorously plane wave, that is, as a parallel beam. Hence the use of parabolic mirrors in search lights." (Electricity, Sound, and Light, by Millikan and Mills, p. 287.)

It is further agreed that such parallel beams afford the most desirable method of illuminating road or other surfaces for automobilists.

This principle of physics has found its way into the minds of various inventors and through them into various patents. Five patents expressing the theory of prefocussing are offered in evidence.

1. Workman—French—1923, No. 561,-961.

"The principal object of the invention is to provide means with the aid of which the lamps may be kept firmly and in a secure manner in their sockets, and also to assure *the correct position of the filament* of an incandescent lamp with reference to its socket or with reference to the reflector or lens arrangement having as its office the direction and control of the flood of light emitted by the lamp. The invention is particularly applicable to the lamps used for projections and more particularly to *automobile headlamps or spotlights.*" (lines 2–11)

2. Workman—U. S.—1927, No. 1,-640,867.

"This invention relates to electric incandescent lamps and to lamp holders therefor. The principal object of the invention is to provide for the correct *locating of the filament* of an electric incandescent lamp in relation to its lamp holder or to an optical reflector or lens system by which the light emitted from the lamp is directed and controlled. This invention is particularly applicable to lamps used for light projection purposes and more particularly to *motor car head lamps.*" (lines 1–12)

3. Moore—1925, No. 1,558,386.

"To accomplish these' ends, besides well designed optical devices or light concentrating devices, such as reflectors, lenses, etc., it is necessary to have a concentrated light source *properly located* with respect to such optical devices. If the concentrated light source is an incandescent lamp which must be renewed from time to time, it is desirable to be able to make such replacements in the field conveniently, and at the same time have the replaced filament assume the same and proper relation with respect to the optical devices as that of the lamp replaced." (lines 21–34)

4. Leake—1928, No. 1,691,014.

"To accomplish these ends, besides well designed optical devices or light concentrating devices, such as reflectors, lenses and the like, it is necessary to have a concentrated light source properly located with respect to the *focus* of such optical devices. If the concentrated light source is an incandescent lamp which must be renewed from time to time, it is desirable to be able to make such replacement in the field conveniently, and at the same time have the replaced filament assume the same and proper relation both as to the position of the filament and the relation of the side of the filament giving the most desired illumination with respect to the optical devices as that of the replaced lamp." (lines 12–28)

5. Marette—1931, No. 1,825,078.

"The present invention relates to an incandescent lamp for projection apparatus permitting the obtainment of the exact vertical position as well as the angular position of the lamp filament with reference to the optical system of the apparatus employing the said lamp." (lines 1–7)

It is true that only the two oldest patents, to Workman, suggest the availability of the indicated lamps for "motor car head lamps". The argument of nonanalogous art is not and, as we think, cannot be seriously pressed. Assuming the desirability of prefocussing to secure "long

range visibility", it is not important that such long range visibility is along a steel track rather than along a concrete highway.

That all being so, the problem narrows itself to a question of mechanical method. We are quite willing to award mechanical superiority to the method of the patent in suit. That method is the addition of a flange (narrow circular shelf) with slots fashioned to fit into lugs in the reflector surface. Two early patents (Weston, No. 298,142—1884; Weston, No. 320,027—1885) show flanges and slots. The inventor therein (incidentally a very distinguished New Jersey electrical expert) concerned himself rather with effective locking than with prefocussing. The more modern patents, above cited, designed with specific reference to such prefocussing, adopt what are deemed to be improvements on the ancient and well-known bayonet slot (a spring, lug, a right angled slot). These improvements are:

In Moore "a supplemental sleeve with the pins corresponding to bayonet slots in a socket shell".

In Marette "a ring with unsymmetrical tenons and another ring carrying three pairs of slots or notches placed in the unsymmetrical position in the same manner as the tenons of the ring".

In Workman "a ferrule with lugs for securing the lamp in the bayonet lamp holder".

The object of these variations in mechanical method is to afford a simpler and better method of giving each successive filament exactly the same predetermined position with reference to its projector or reflector. The flange slot, and lug device, of the patent at bar seems an advance in the art. We appraise that advance as below the standard of invention laid down by the United States Supreme Court. Invention is a question of fact. There being innumerable states of inventive facts, direct factual precedents are rare. There happens, we think, to be one applicable here. In a recent case, Essex Razor Blade Corporation v. Gillette Safety Razor Company, 299 U.S. 94, 57 S.Ct. 68, 81 L.Ed. 60, reversing the Third Circuit's reversal of ourselves, 83 F.2d 541, the Supreme Court held invalid a patent in the razor blade art saying:

"As already suggested, every safety razor consisting of a combination of guard, cap, blade, and clamping means must also provide means to keep the blade in position relative to the cap and guard. The means adopted have been various. Gillette resorted to the device of square rods or round pins fixed either to the guard or to the cap and slots or holes in the blade and the other member through which the rods or pins should pass to fix the blade in position. Gaisman fixed the blade relative to the guard by one set of lugs and slots and fixed it in relation to the cap by another set of lugs and slots. *The choice was one between alternative means obvious to any mechanic; it did not have the quality of invention."* At page 98, 57 S.Ct. at page 69.

The bill will be dismissed.

The opinion of the Court in this case, as filed, contains a statement of essential facts and applicable rules of law indicating the grounds of the decision and it may stand in compliance with the provisions of Equity Rule 70½, 28 U.S.C.A. following section 723.