### SHAKESPEARE PRODUCTS CO. et al. v. COE, Com'r of Patents.

### No. 7146.

United States Court of Appeals for the District of Columbia.
Decided Feb. 27, 1939.

Otis A. Earl and William S. Hodges, both of Washington, D. C., for appellants.

R. F. Whitehead, United States Patent Office, of Washington, D. C., for appellee.

Before STEPHENS, EDGERTON, and VINSON, Associate Justices.

PER CURIAM.

The findings and conclusions of Chief Justice Wheat, in the District Court, were as follows:

"1. This is a suit brought under the provisions of Sec. 4915, R.S. (U.S.C., title 35, sec. 63, 35 U.S.C.A. § 63) which involves an application of William Shakespeare, Jr., No. 737,140, filed July 27, 1934, assigned to the plaintiff, Shakespeare Products Company.

"2. The application of William Shakespeare, Jr., No. 737,140, relates to an improvement in Control Devices, and particularly to the placing in such a control device a spring designed to exert sufficient pressure to effectively hold the parts of the control device in adjusted position and to prevent rattling therebetween. The application shows such a device designed to be used for controlling carburetors and starters of automotive vehicles. Such a device includes a tube extending through the dash of the automobile and a flexible rod extending through the tube and to the device to be controlled, a knob being provided on the end of the rod in front of the instrument board of the vehicle. The outer tube has a chamber therein for receiving the spring and the spring is so shaped that by increasing or diminishing the outer diameter of the chamber the pressure on the rod can be varied to suit any particular condition.

"3. The Weatherhead patent No. 1,-750,697, shows a similar control device in which, in the chamber in the tube, there is placed a spring collet designed to closely clasp the rod and hold it in the adjusted position.

"4. The patent to Norviel, No. 1,641,-396, shows a remote control device in which a spring is provided for exerting a pressure on the rod.

"5. The Judson patent No. 1,475,344, discloses a spring device arranged around the steering rod of an automobile and of a size to exert pressure on the inner side of the steering column whereby to prevent rattling of the steering rod.

"6. The Swedish patent No. 21,814, discloses a tool chuck in which a spring is arranged in a chamber in the chuck so as to hold the tool in position.

"7. The Duryea patent No. 1,619,710, discloses a dust cap for covering the stem of a tire valve, a spring being provided inside the dust cap so as to prevent the accidental displacement of the cap under the vibration and shocks which may be imparted to the automobile wheel. This spring is so shaped that the outer ends of the curved fingers bear against the inside of the cap and the bowed portion of the fingers bear against the valve stem.

"8. The spring shown in the application in suit is of approximately the same shape and formation as the spring of the Duryea patent.

Conclusions

"1. It was not invention to use a spring such as shown in the Duryea patent in lieu of the spring collet shown in the Weatherhead patent.

"2. The claims in suit are not patentable over the prior art cited in the Answer to the Bill.

"3. The plaintiff is not entitled to a patent on the Shakespeare application in suit containing claims 1, 2, 3, 4, 7 and 8, as set out in paragraph 6 of the Bill.

"4. The Bill should be dismissed."

■■■■ We agree with the District Court and the Patent Office. Appellants urge that dust caps, tool chucks and steering columns are not analogous to control devices. But we agree with the Solicitor for the Patent Office that "the art here in question is not control, or remote control, devices but is the art of holding a rod in a tube in a position where it will not rattle and where it can be temporarily held in a desired position." Essex Razor Blade Corporation v. Gillette Safety Razor Company, 299 U.S. 94, 57 S.Ct. 68, 81 L.Ed. 60, is in point. The Court there held that the Gaisman patent for razors and razor blades was invalid for lack of invention, and said:

"Every safety razor consisting of a combination of guard, cap, blade, and clamping means must also provide means to keep the blade in position relative to the cap and guard. The means adopted have been various. Gillette resorted to the device of square rods or round pins fixed either to the guard or to the cap and slots or holes in the blade and the other member through which the rods or pins should pass to fix the blade in position. Gaisman fixed

the blade relative to the guard by one set of lugs and slots and fixed it in relation to the cap by another set of lugs and slots. The choice was one between alternative means obvious to any mechanic; it did not have the quality of invention." Page 98, 57 S.Ct. page 69. Apparently no one before Gaisman had applied to razors precisely the scheme which he employed to keep the parts in position; just as, in the present case, no one before Shakespeare had applied to a control device precisely Duryea's spring. But in the razor case the substitution was "obvious to any mechanic," while here it was obvious to any mechanic acquainted with known means of holding a rod semi-fixed in a tube. In either case the substitution, however new and useful, is not invention, for "An invention is a new display of ingenuity beyond the compass of the routineer;" the line is between "what seems an easy step and what does not." Kirsch Manufacturing Company v. Gould Mersereau Company, Inc., 2 Cir., 6 F.2d 793, 794.

Affirmed.