Otis B. Johnson,
Secretary.

## R. J. FUNKHOUSER & CO., Inc., et al. v. FISKE & CO., Inc., et al.

### No. 6880.

Circuit Court of Appeals, Third Circuit.

June 21, 1939.

Rehearing Denied July 28, 1939.

David P. Wolhaupter, of Washington, D. C., for appellants.

Robert Cushman and Richard F. Walker, both of Boston, Mass., for appellees.

Before DAVIS, BIGGS, and MARIS, Circuit Judges.

DAVIS, Circuit Judge.

As owners of the Atkinson patent No. 1,792,058, issued on February 10, 1931, which relates to a "method of making colored granules and the article made thereby", the plaintiffs filed suit in the District Court against the defendants-appellants for infringement thereof. The defendants contested both the validity of the patent and the charge of infringement, but the learned District Judge held claims 8 and 9 of the patent to be valid and infringed. Accordingly, on July 15, 1938, he entered an interlocutory decree enjoining further infringement and directing an accounting of profits and damages. From this decree, the defendants appealed.

The questions at issue are whether or not claims 8 and 9 of the patent are valid and, if valid, whether or not the defendants infringed them.

The claims describe both the process and product and read as follows:

"8. Method of making clay or shale granules for architectural finishing purposes, which comprises comminuting compacted raw clay or shale to a granular mass containing grains of the ultimately required size, separating said grains of the ultimately required size from other sizes and from dust, and subjecting the same to a nonfusing, hardening temperature.

"9. Granular material, the individual granules being characterized by having a heat hardened, nonvitrified body of argillaceous shale and angular shapes corresponding substantially to the fracture of the original shale."

Shale, the raw material utilized in the manufacture of these granules, is defined as a "rock formed by the consolidation of clay, mud, or silt, having a finely stratified or laminated structure". It presents "almost endless varieties of texture and composition, passing, on the one hand, into clays, or, where much indurated into slates and argillaceous schists; on the other into flagstones and sandstones; or again through calcareous gradations into limestone, or through ferruginous varieties into clay ironstone, and through bituminous kinds into coal". Webster's New International Dictionary, 1929 Ed. The particular type of shale recommended by the patent is an argillaceous or "clayey" shale which is "suitably compact" and "firmly consolidated, massive clay (such as that known as 'lower Kittaning deposit', vein No. 3 Pennsylvania) or a more dense compact argillaceous shale (such as red brick shale, Watsontown Valley, Pennsylvania) * * *". Under the method described in the patent, the shale is crushed into desired sizes and heated in a rotary kiln at temperatures between 1,750° and 2,000° fahrenheit, which, it was claimed, "heat hardened" the particles without causing fusion or vitrification. The finished granules were used chiefly in the manufacture of roofing shingles.

To show that claims 8 and 9 of the patent had been anticipated, the defendants cited the following patents: the Wright patent, No. 1,022,764 (issued April 9, 1912); the Osgood patent, No. 1,169,506 (issued January 25, 1916); the Hayde patent, No. 1,255,878 and the Hayde reissue patent, Re 16,750 (issued February 12, 1918 and reissued September 27, 1927); the Fisher patent, No. 1,782,649 (issued November 25, 1930), and the Brown patent, not issued until November 10, 1931, but based upon an application filed October 31, 1925.

The Wright patent comes closest to the one in issue and seems to anticipate the product described therein. It relates to the manufacture of roofing material by imbedding particles made of "baked earthy materials of which brick, tile, pottery and the like are formed", upon material treated and saturated with "bitumen, coal tar, or any other suitable organic or mineral wax". The particles so used present "an irregular fracture" and a "roughened surface due to porosity, and thus a tenacious bond between the particles * * * and the coating * * * is produced when these particles are imbedded therein".

Moreover, the crushing of brick and other substances, which had previously been baked, was a method well known to the prior art for producing roofing granules. Though this process may have resulted in an inferior product, it does not seem to us that the change from a process of baking the material first and then crushing it afterward to a process of crushing it first and then baking it has "the quality of invention". Essex Razor Blade Corp. v. Gillette Safety Razor Co., 299 U.S. 94, 98,

57 S.Ct. 68, 69, 81 L.Ed. 60. Consequently, claims 8 and 9 are invalid and it is unnecessary to discuss the question of infringement.

The decree of the District Court is reversed with directions to dismiss the bill.