### ADDRESSOGRAPH–MULTIGRAPH CORPORATION v. STAUDT et al.

No. 36.

Circuit Court of Appeals, Second Circuit.

Jan. 8, 1942.

Albert H. Bates, of Cleveland, Ohio, and Robert W. Byerly, of New York City, for appellant.

Philip S. McLean and Lester M. Friedman, both of New York City, for appellees.

Before SWAN, CHASE, and FRANK, Circuit Judges.

CHASE, Circuit Judge.

This suit in equity was brought by the plaintiff in the District Court for the Southern District of New York charging the defendants, as co-partners in business under the trade name of Address-O-Plate Company, with contributory infringement of claims 1, 3, 13 and 14 of United States Patent No. 2,030,865 which was granted to plaintiff's predecessor as the assignee of Walter T. Gollwitzer on Jan. 18, 1936 for an address plate. The District Court construed the claims so narrowly that what the defendants have done could not be contributory infringement if that construction of the claims is correct. They have made and sold what will hereinafter be described and called printing plates having notches in either end which they knew made them fit the plaintiff's patented frame and which they knew would be used in such frames. The plaintiff has appealed. We shall first consider whether the claims were properly construed for, if they were, that ends the matter.

An address plate to which the patent relates consists of two principal parts. One of them is a flat rectangular piece of metal which is the printing plate that will be called the plate to distinguish it from what will be called the frame. That is a larger metal piece having overhanging retaining ledges beneath which the plate may be slid and spring stops at each end which hold the plate in position. The plate and frame so put together are run through an addressing machine to print whatever is on the plate. Such printing differs from what may be called ordinary printing in that there is a complete change of type after each impression instead of repeated printing with the same type.

As the specifications state, "The invention relates to such mutual formation of the frame and the printing plate as will enable the very ready installation or removal of the printing plate from the frame, but will result in the effective holding of the printing plate when in place." The difficulty grew mostly out of the fact that the printing plate had to be both securely and detachably held to the frame by means of small metal parts fashioned from the thin metal of the frame so that it would stay in place while running through the machine and yet be readily removable to make room for putting another plate into the frame before it went through the machine again.

For a number of years before the patent, such address plates and frames were in wide use. The spring-held stops on the frame which prevented endwise movement of the plate after it was in position and which had to be depressed before the plate could be removed were at first merely little humps pressed up from a partially cut-out portion of the frame which acted as a spring. The plate, when in position, had such a spring-held hump abutting either end. The operator was expected to depress this hump below, or at least even with, the under surface of the plate to permit the plate to slide out and to do that by pressing upon it with a finger or thumb nail. Sometimes the spring tension was too great to permit that to be easily done and then an operator would use the end of something like a nail file. That might depress the spring so far that it would not return to place and might even cause a bend in the flat spring. When either of these things happened, the frame would no longer hold the plate satisfactorily and if it did not when used in the addressing machine would be apt to cause

it to jam. This particular trouble was well taken care of by what is called an old-style frame the plaintiff made which is shown in the record as defendants' exhibit C. It is prior art and has at least two important improvements over what has been called the first construction. The raised hump on the spring end became a little extrusion pushed out at or near the top of a bent-up portion of the spring which served to hold the moveable, bent end of the spring in a plane parallel with the main portion of it but higher by slightly more than the width of the address plate; and underneath this moveable raised end of the spring was a ledge in the frame which allowed the spring to be depressed only about as low as needed to let the plate slide in or out. What has just been called the bent up portion was the entire width of the spring at that point bent substantially at right angles both at the bottom and the top of what will now be called the one strut.

The specifications of the patent show a modification of the spring structure of defendants' exhibit C by making cuts in the strut of the spring to form three inclined struts, one on either outer side and one in the middle, which carry the moveable end portion of the spring in a plane parallel to that of the main portion and just enough higher to permit the end of the plate when inserted in the frame to coact with the cut-out edges of the end portion of the spring on either side of the middle strut. And so it might be said that the hump was replaced by cut-out edges in the raised end portion of the spring that will now be called the platform. To give sufficient rigidity to such a platform held by three struts, the outside struts were brought up at an incline of about half a right angle from the flat part of the spring, which became the lower part, to points on either side of the back of the cut-out part of the platform and the front edge of that cut-out part of the platform was met by the middle strut. This gave the cut-out part of the platform a front and back bearing on the upper ends of the struts and that was what kept the abutting edges of the platform in place to meet the plate end after it was inserted in the frame. This meeting of the upper end of the middle strut with the front edge of the cut-out part of the platform required, if the middle strut was to be brought up at practically the same angle

as the outside struts, a cutting back into the spring toward its fixed base far enough to get the needed base point for the strut. The patentee adopted that construction and disclosed a light but strong frame which differed in the respects mentioned from the prior art exemplified by defendants' exhibit C.

This cutting back to bring the middle strut up on an incline like that of each of the outer struts made, of course, that base of the middle strut the first obstruction a printing plate would hit when it was put into the frame. But it was not desirable that the plate end should hit the base of the middle strut. That did not provide a suitable abutment and it would prevent the wanted contact with the platform edges. Consequently the old plates would not fit the new frames and to make them fit properly, or to make new plates so fit, the part of the plate end which would otherwise strike the middle strut had to be removed. The patentee did that by cutting a little slot in each end of the plate to permit it to straddle the middle strut. Such straddling alone could be accomplished by a cutting out of metal in sufficient size and in any shape to permit it. The patentee disclosed a little slot, with sides parallel to the sides of the plate, just wide enough and deep enough to avoid hitting the strut before the two thus separated end portions of the plate struck, and were stopped by, the edges of the platform.

One of the features much emphasized in the patent was the closeness of the fit of the end slot in the plate over the middle strut in the spring on the frame. The advantage so obtained was said to be a better positioning of the plate in the frame than could be obtained by having it held from sidewise movement only by the overlapping frame edges which, holding it loosely enough to permit insertion and withdrawal without binding, would allow some sidewise movement. Another advantage was that, by having the struts holding the raised platform which carried the abutting surfaces gradually inclined, they could be formed without as much danger of breaking the metal as if bent at right, or near right, angles as was the case in the one-piece strut of the old style frame shown in defendants' exhibit C.

If, however, the slot in the plate end merely served to allow the plate to straddle the middle strut and let the portions on either side abut against the edges of the

raised platform, only part of the disclosed usefulness of the patented construction could be obtained for there would be no coaction between the sides of the middle strut and the sides of the notch in the plate to hold the plate from sidewise movement. There would, nevertheless, be coaction between the plate end portions on either side of the notch and the edge of the raised platform on either side of the middle strut to prevent endwise movement.

All of the claims in suit cover the combination of plate and frame without limitation in language to notches in the plate which fit the middle strut so as to restrict the transverse movement of the plate. That feature is elsewhere claimed but the court below held that the claims in suit must all be construed narrowly enough to bring it into them and when the claims were so construed no contributory infringement was found.

 Granted that the entire invention disclosed in the specifications included the close fitting of the middle strut in the notch to restrict transverse movement of the plate, the validity of the claims in suit would not necessarily depend upon the inclusion in them of that feature. The test is whether, regardless of that, the claims sued on cover a patentable advance over the prior art which the specifications disclose; since a patentee need not make each of his claims cover his entire invention. He may dedicate part of it to the public by failing to claim it but that will not deprive him of so much as is adequately claimed. And so the claims in suit may cover a disclosed invention which is a combination of plate and frame that does not necessarily include any direct coaction between the middle strut of the platform on the frame and the sides of a slot in the end of the plate. That, of course, depends upon whether it required the genius of an inventor with knowledge of the prior art to create a frame having a raised platform supported by three inclined struts and having abutting edges on either side of the middle strut to hold in position a plate made to fit into the frame.

There is nothing in the proved prior art which is a complete anticipation of that. But was it invention to provide such a raised platform held by three inclined struts and let the platform edges thus obtained do what the little nub of defendants' exhibit C had previously done in conjunction with the portion of the spring which elevated and held the raised platform? Surely it involved no mechanical problem beyond the skill of a good workman and it is but common knowledge that one strut, or multiple struts, for support are optional as desire and circumstance may dictate. That is equally true as to the change this multiple strut platform support required to be made in the plate in order to provide it with divided ends to abut properly against the two parts of the platform edges separated by the middle strut. It needed but the removal of that portion of the end which would otherwise strike the incline of the middle strut and prevent the meeting of the end with the platform edge. Any workman of ordinary skill would have known that. It would take more ingenuity to "invent" something which is patentable than merely to cut away a portion of the plate end to make it fit properly into the frame. Hotchkiss v. Greenwood, 11 How. 248, 13 L.Ed. 683. Moreover, such an expedient was by no means new even in address plates. A slot in either end of a similar address plate to straddle an obstruction on the frame is shown in Patent No. 1,682,188 granted Schaefer, Aug. 28, 1928. Without coaction between the middle strut and the plate to restrict sidewise movement, no invention was disclosed since there was nothing patentably new in combining the frame and plate of the patent to get substantially the same result in substantially the same way the plate was combined with the plaintiff's old style frame shown by defendants' exhibit C. Blake v. City and County of San Francisco, 113 U.S. 679, 5 S.Ct. 692, 28 L.Ed. 1070. Such slight and obvious modifications of the old do not create something new and patentable in combination or not. Cuno Engineering Corp. v. Automatic Devices Corp., 314 U. S. 84, 62 S.Ct. 37, 86 L.Ed. ——.

Accordingly, we agree with the trial judge that the claims in suit cannot be construed as broadly as their language alone permits without making them invalid. Compare, Essex Razor Blade Corp. v. Gillette Safety Razor Co., 299 U.S. 94, 57 S.Ct. 68, 81 L.Ed. 60; Gillette Safety Razor Co. v. Hawley Hardware Co., 2 Cir., 64 F.2d 10. We need not now decide whether they may, in the light of the specifications and of the other claims, be saved by restricting them to a combination of a frame with a plate having a

notch in either end into which the middle strut fits so snugly that the transverse movement of the plate in the frame is restricted. When, and if, so read the defendants have in no way contributed to their infringement.

■ They have made an address plate which will fit the plaintiff's patented frame as well as its old style frame, for which it could admittedly be lawfully made. It will fit the new style patented frame because the defendants have put comparatively wide slots in either end ostensibly to serve as a trade mark. These slots are not centered in the ends. They are wide enough to straddle the middle strut in plaintiff's patented frame but not narrow enough to touch it so as to restrict the transverse movement of the plate in the frame. Providing plates so constructed for use in plaintiff's frames is not, for the reasons stated, contributory infringement of any claim in suit.

Affirmed.

Edward G. Baker, of St. George, S. I., N. Y. (Edward G. Baker, of St. George, S. I., N. Y., and Irving Ginsberg, of Staten Island, N. Y., of counsel), for Thomas F. Berley.

Leon Fiol, Trustee in Bankruptcy, appellee and attorney in person.

Kamen & Ostertag, of New York City (S. S. Ostertag, of New York City, of counsel), for E. B. Latham & Co., objecting creditors, appellees.

Before AUGUSTUS N. HAND, CLARK, and FRANK, Circuit Judges.