### ADDRESSOGRAPH–MULTIGRAPH CORPORATION v. COOPER et al.

### No. 253, Docket 20161.

Circuit Court of Appeals, Second Circuit.
July 18, 1946.

CLARK, Circuit Judge, dissenting.

———◆———

Joshua Ward, of New York City, and George H. Wallace and Charles B. Cannon, both of Chicago, Ill. (Ward Crosby & Neal, of New York City, and Wallace & Cannon, of Chicago, Ill., of counsel), for plaintiff-appellant.

J. B. Felshin, of New York City, for defendants-appellees.

Before SWAN, CLARK and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

This is an appeal from a final decree dismissing a complaint in a suit brought for infringement of United States patent No. 1,967,221 issued to William R. Allen and Emmett C. Hartley on July 24, 1934, for a Printing Plate and Holding Means Therefor.

A former suit brought in the court below by the present plaintiff-appellant against only the individual defendant-appellees herein for infringement of this patent terminated in a consent decree dated January 25, 1939. In that decree it was adjudicated first that the patent was good and valid in law as to each of its claims, and second that the plaintiff-appellant was possessed of the entire right, title and interest therein. Then the decree continued: "That, whereas the defendants have repre-

sented that they have merely furnished to others printing plates .employing the invention covered by said Letters Patent for use upon the holding means of said Letters Patent as claimed therein, but that they have not made or sold the aforesaid printing plates and have no intention of making, using or selling such printing plates, plaintiff has waived the issuance of an injunction against, and an accounting by, the defendants, Eva Cooper · and Milton Berg, and each of them." In conclusion the decree awarded taxable costs to the defendants.

At the trial of the present suit in the court below the plaintiff-appellant contended that the consent decree in the former suit estopped all the defendants from contesting the validity of the patent. The District Court, however, held otherwise and then proceeded to hold both claims of the patent here in issue invalid for lack of invention. This appeal, therefore, presents two questions. We shall consider them in the order stated.

The District Court found that the individual defendants were incorporators and are directors and officers of the defendant corporation; that they own all but one share of its stock; that the evidence does not disclose that anyone other than themselves controlled or transacted any business of the corporation; and that they participated in the manufacture and sale of the plates which it was conceded by the corporation over which they had control infringe the plaintiff's patent if it is valid. On the basis of these findings it properly concluded that if the consent decree in the former suit estopped at all, it estopped the corporate defendant as well as the individual defendants. But the court below concluded that the consent decree in the prior suit was invalid as a matter of law for the reason that infringement was not adjudicated therein, and hence that it did not estop any of the defendants from later contesting the validity of the patent. It found that there was no trial in the former suit nor any adjudication therein on the merits as to the validity of the patent; that the consent decree, although it did not give the defendants any relief, provided for the payment of costs to them; that it did not

provide for any injunction or accounting, and that it did not disclose that there had been any infringement of the plaintiff's patent. "On the contrary," it found, "the evidence discloses that the defendants rejected a proposed consent decree submitted by plaintiff to them because it contained an allegation that they infringed the patent. The consent decree, therefore, submitted by the plaintiff to the defendants and signed by them does not contain any allegation of infringement." And it found "If the defendants in the prior suit did not infringe at the time said consent decree was entered, they were not seriously interested in any adjudication of the validity of the patent." On these findings the court below concluded that the consent decree in the prior suit adjudicating the patent to be valid could not be sustained. In other words, the court below held as a general proposition of law that an adjudication of the validity of a patent, unless accompanied by an adjudication of infringement, is invalid and will not estop a defendant from later contesting the validity of the same patent in another suit for infringement brought by the same plaintiff.

We agree with the District Court that the issue of infringement was not adjudicated one way or the other by the decree in the former suit. And, although no case directly in point has come to our attention, we also agree with the District Court that on grounds of public policy such a decree does not estop.

In Pope Mfg. Co. v. Gormully, 144 U.S. 224, 12 S.Ct. 632, 636, 36 L.Ed. 414, decided in 1892, the question before the Supreme Court was whether a court of equity can be called upon to decree the specific performance of a provision in a licensing contract whereby the defendant-licensee had agreed never to dispute or contest either the validity of, or the plaintiff-licensor's title to, the patents covered by the license. In it the court stated the "real question" to be whether by contract "the defendant can estop himself from disputing patents which may be wholly void, or to which the plaintiff may have no shadow of title." Then it proceeded to consider whether such contracts were void as contrary to public policy, in the course of which it said that "It

is * * * important to the public that competition should not be repressed by worthless patents * * *", and "it is a serious question whether public policy permits a man to barter away before hand his right to defend against unjust actions or classes of actions * * *" "But," the Supreme Court continued, "whether this contract be absolutely void, as contravening public policy, or not, we are clearly of the opinion that it does not belong to that class of contracts, the specific performance of which a court of equity can be called upon to enforce," and on this ground a decree below dismissing the plaintiff's bill of complaint was affirmed.

Several recent decisions have elaborated upon and applied the public policy adverted to in the above case to various concrete situations.

In Electrical Fittings Corp. v. Thomas & Betts Co., 307 U.S. 241, 59 S.Ct. 860, 83 L.Ed. 1263, the Supreme Court held that a defendant in a suit for patent infringement who appealed from a decree adjudicating a claim of the patent sued upon valid although not infringed was entitled to reformation of the decree by eliminating therefrom the portion dealing with validity so that it would not stand as an adjudication of that issue, and this in spite of the fact that the decree as it originally stood finally terminated the litigation in the defendant's favor. Then subsequently, on the basis of the above case and the decision in this circuit of Cover v. Schwartz, 2 Cir., 133 F.2d 541, the Supreme Court announced in Altvater v. Freeman, 319 U.S. 359, 363, 63 S.Ct. 1115, 1117, 87 L.Ed. 1450, that "To hold a patent valid if it is not infringed is to decide a hypothetical case."

But, logic notwithstanding, it does not follow that to hold a patent invalid if it is not infringed, is also to decide a hypothetical case. See Hale v. General Motors Corp., 1 Cir., 147 F.2d 383, 388; Grant Paper Box Co. v. Russell Box Co., 1 Cir., 151 F.2d 886, 890; Sinclair & Carroll Co., Inc., v. Interchemical Corp., 325 U.S. 327, 330, 65 S.Ct. 1143, 89 L.Ed. 1644. The reason for this is the importance to the public generally that an invalid patent "should not remain in the art as a scarecrow." Bresnick v. United States Vitamin Corp., 2 Cir., 139 F.2d 239, 242. Then in Mercoid Corp. v. Mid-Continent Investment Co., 320 U.S. 661, 670, 64 S.Ct. 268, 88 L.Ed. 376, the Supreme Court held that in patent cases, as in other litigation, equitable relief should be either extended or limited as the public interest may require, and that as a result the doctrine of res judicata in patent cases is limited by the public policy against monopoly.

On the basis of these cases, particularly Cover v. Schwartz and Electrical Fittings Corp. v. Thomas & Betts Co., supra, we would find no difficulty whatever in reaching the conclusion that the consent decree in the former suit would not operate to estop if non-infringement had been directly adjudicated therein. But even though we can only say that the consent decree left the issue of infringement without adjudication, nevertheless we think on grounds of public policy we ought to rule that in a decree, at least in one entered by consent, either an adjudication of infringement, or a grant of some relief from which infringement may be inferred, is essential before any effect of res judicata can be given to it on the issue of validity. In other words, we think the public interest in a judicial determination of the invalidity of a worthless patent is great enough to warrant the conclusion that a defendant is not estopped by a decree of validity, at least when the decree was by consent, unless it is clear that in the litigation resulting in the decree the issue of validity was genuine.

This brings us to the question of the validity of the two claims in issue, and this need not detain us long.

The patent in suit relates to a printing apparatus employing a printing plate mounted upon by being wrapped around and fastened by its ends to a rotary drum; the particular invention covered, according to the initial sentence of the patent, "being concerned with the mutual formation of the printing plate and the means for attaching it to the drum." Admittedly printing apparatus of the type described is old, and the court below found that for many years before the date of the plaintiff's patent the flexible metallic plates used therein had been provided with holes near their

ends so proportioned and spaced as to engage pins on the means for holding the plates to the drum. We are not concerned here, however, with any form of holding means for the reason that the claims in suit do not cover the plate in combination with any holding means. They cover only the shape and form of the plate itself [1] and read as follows:

"7. A comparatively long and narrow flexible metallic printing plate having at the ends thereof a series of spaced integral projections, each being rounded on its end, and the spaces between the projections being reversely rounded.

"8. A metallic printing plate having a series of ears on its end integral with the plate and slots through the ears, the outermost portion of the slots being beyond the innermost portion of the spaces between the ears."

■ Thus the claims of the patent here in issue are only for an old type of plate modified as to its shape and structure by having its ends scalloped and provided with slots instead of having its ends straight or crenelated and provided with holes. Certainly no exercise of the faculty of invention is required to substitute a slot for a hole, and the substitution of a scalloped for a straight or crenelated edge to make the plate fit the new holding means, if required at all, a matter not free from doubt, does not amount to invention. It is too obvious for argument that even an amateur mechanic would know enough to cut the plate to fit the holding means. The cases of Gillette Safety Razor Co. v. Standard Safety Razor Co., 2 Cir., 64 F.2d 9; Gillette Safety Razor Co. v. Standard Safety Razor Corporation, 2 Cir., 74 F.2d 691; Addressograph-Multigraph Corporation v. Staudt, 2 Cir., 124 F.2d 672, 675, are clearly in point.

The judgment of the District Court is affirmed.

CLARK, Circuit Judge (dissenting).

Several years ago the individual parties herein were in the same dispute as to the plaintiff's patent which is here repeated. The resulting litigation was terminated by the District Court in 1939 by a decree which adjudged the patent "good and valid in law as to each of the claims thereof." The decree then went on to recite that plaintiff had waived an injunction and an accounting, giving as reason therefor the defendants' representations that "they have merely furnished to others printing plates employing the invention" without making or selling them and that they "have no intention of making, using or selling such printing plates." This final adjudication of the appropriate court, made with the parties before it, is now treated as a nullity as to these same parties both by the court below and by my brethren herein. The only variant is that defendants have resorted to the transparent cover for their renewed actions of a corporation—an artifice which has been properly rejected as of no moment by both courts. Other than that this is a suit involving patents, I do not discover just what the grounds are for thus disregarding a formal court decree.

Of course we all have come to recognize a new climate of opinion as to patents—one which stresses the desirability of prompt invalidation of doubtful patents. But the very facility with which this can be done makes it unnecessary to resort to doubtful new principles of law to get rid of inconsequential patents. That this patent may have a small scope of operation against only these two individuals would seem a less evil than that they should be able to repudiate their agreement of settlement and flout the court's decree. So far as this represents an agreement, it is a more solemn one than the ones held no bar to a claim of patent invalidity; it is an accord and satisfaction of a bona fide dispute, not an agreement forced upon one in restraint of trade or an estoppel implied from accepting a license. So far as it is a court decree, it is more than merely a consensual affair, both because it is a court act and because, moreover, it was entered not only upon consent of the solicitors for the respective parties, but also "on the pleadings and pro-

---

[1] This construction of the claims is confirmed, as the District Court [60 F. Supp. 698] pointed out, "by the fact that all the other twenty claims [of the patent in suit] relate to the plate in combination with holding means."

ceedings herein," which included the extensive deposition upon oral testimony of Milton Berg. The subject matter of this disposition was the defendants' activities in selling printing plates, as I shall discuss below. Hence the judgment was fully on the merits and thoroughly final.[1]

Let us consider the various suggestions for the invalidation of this judgment. That it was called a "consent decree" is not enough. A judgment entered upon concessions of fact by the parties is as binding, as obviously it should be, as a judgment entered upon the court's acceptance of one of two conflicting stories told from the witness stand. United States v. Swift & Co., 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999; cf. General Elec. Co. v. Hygrade Sylvania Corp., D.C.S.D.N.Y., 61 F.Supp. 476, 491, 492; Heiser v. Woodruff, 66 S.Ct. 853, 857. And here the decree was entered only after the giving of testimony by the important defendant on the point which was at issue between the parties.

Next it is said that the decree cannot stand because there was no finding of infringement. This seems to me a most unfortunate statement in both its branches, sure to come back to plague us in the future. First, there was infringement. In the decree, defendants represented that they "furnished" the patented printing plates to others; and this was fully explained by Berg in his deposition that he furnished some plates to one Louis Tutman, or as he put it: "He got a few plates that I left him when I was working for Duxback. Later on when I switched [employers] I still came up to sell him equipment which I was interested to sell. He never got a bill and there was never paid any money to me or anybody at the Alumo Company, or any place at all, not only for this particular plate, but for any plates at all." I suggest it is highly novel doctrine that infringement is avoided by failing to collect a bill for the infringing product. Compare Patent Tube Corp. v. Bristol-Myers Co., D.C.S.D.N.Y., 25 F.Supp. 776; Scott & Williams, Inc., v. Hemphill Co., D.C.S.D. N.Y., 14 F.Supp. 621. The fact that the parties did spar as to the wording of the decree, and plaintiff finally allowed defendants their costs, seems to me no more than the natural steps in negotiations where each party tried to preserve what it could of both form and substance. It is, of course, the decree by the court which is the binding document.

But second, even were there no infringement, the decree would not be void upon collateral attack. Although it has been cited for diverse and sundry things—since it did cover considerable ground—the only case holding the question of validity "moot," absent a showing of infringement, is Cover v. Schwartz, cited in the majority opinion. Even as far as it went (which was to hold that we lacked jurisdiction of an appeal where the plaintiff-appellant conceded noninfringement), that decision has made confusion and complexity out of matters which should be simple. It is conceded, as it must be, that a defendant may counterclaim for a declaratory judgment as to the patent. Altvater v. Freeman, 319 U.S. 359, 63 S.Ct. 1115, 87 L.Ed. 1450.[2] But there is nothing in the Altvater case which says that a plaintiff cannot likewise ask for a declaratory judgment against adverse claims, thus leaving nothing to the Cover doctrine except lack of a proper prayer for judgment, which is made specifically unnecessary under Federal Rules of Civil Procedure, rule 54(c), 28 U.S.C.A. following section 723c. When Sinclair & Carroll

---

[1] Defendants felt driven to make other objections to the decree, which were overruled below and are not noticed here, such as that their solicitor was not authorized to consent and that costs were not taxed; the latter is clearly unnecessary under cases such as Fowler v. Hamill, 139 U.S. 549, 11 S.Ct. 663, 35 L.Ed. 266, The Washington, 2 Cir., 16 F.2d 206, and other cases cited in Second Preliminary Draft of Proposed Amendments to Rules of Civil Procedure, May, 1945, Rule 58, note, p. 67.

[2] The interpretation here placed upon Electrical Fittings Corp. v. Thomas & Betts Co., supra, 307 U.S. 241, 59 S.Ct. 860, 83 L.Ed. 1263, seems to me unsound, particularly in the light of later cases. That case is actually authority for extension, not contraction, of appellate jurisdiction; the decision below, denying jurisdiction, Thomas & Betts Co. v. Electrical Fittings Corp., 2 Cir., 100 F.2d 403, was reversed to achieve a result just to the defendant under the circumstances. See also United Carbon Co. v. Binney & Smith Co., 317 U.S. 228, 229, 63 S.Ct. 165, 87 L.Ed. 232, and Sinclair & Carroll Co. v. Interchemical Corp., 325 U.S. 327, 65 S.Ct. 1143, 89 L.Ed. 1644.

488

Co. v. Interchemical Corp., 325 U.S. 327, 65 S.Ct. 1143, 89 L.Ed. 1644, stressed the desirability of a decision as to the validity of a patent even where noninfringement is found, I had hoped that this would be the end of the confusing restrictions upon the full and free adjudication of patent cases implicit in the Cover case, which, as I am informed, have embarrassed district judges. See also the powerful criticisms of the case in 52 Yale L.J. 909; Borchard, Challenging "Penal" Statutes by Declaratory Action, 52 Yale L.J. 445, 449, n. 10; and 1 Moore's Federal Practice, 1942 Cum.Supp. 133–135. Here, however, we find these restrictions expanded to the extreme point of justifying collateral attack. But I have seen no case which says that, when a court has gone on to decide a question now asserted to have been "moot," its judgment is a nullity between the parties. Indeed, the idea is contrary to settled conceptions of res judicata. McCormick v. Sullivant, 10 Wheat. 192, 23 U.S. 192, 6 L.Ed. 300; Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 376, 378, 60 S. Ct. 317, 84 L.Ed. 329; Jackson v. Irving Trust Co., 311 U.S. 494, 503, 61 S.Ct. 326, 85 L.Ed. 297; Heiser v. Woodruff, supra; Ripperger v. A. C. Allyn & Co., 2 Cir., 113 F.2d 332, certiorari denied 311 U.S. 695, 61 S.Ct. 136, 85 L.Ed. 450.

It seems to me therefore that we must come back to some peculiar doctrine applying only against patentees. If so, I think we ought to come out directly and so state. But it certainly would be odd to say, without one word of support in procedural rules and statutes, that only one contesting a patent can seek and obtain a declaration or other judgment as to validity without a finding of infringement. This, I fear, is another illustration of a not unusual judicial habit, that of warping procedural rules, at the sacrifice of their general utility, to meet what are conceived to be the exigencies of a particular situation. There seems no reason why a patentee should not be allowed to seek a declaratory judgment like any other litigant, or why a judgment for the *defendant* in such a suit is not as effective a procedure in restricting patents as would be a judgment on a defendant's counterclaim. And the queries become the more insistent when the attack is made by de-

fendants collaterally upon a decree as much their own as it is plaintiff's.

It is true that in Mercoid Corp. v. Mid-Continent Inv. Co., 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376, the Supreme Court held the doctrine of res judicata in patent cases to be limited by the public policy against monopoly or illegal restraint of trade. The Court was there sharply divided, and the reaches of the decision cannot yet be considered clearly defined. But it seems as yet clearly limited to agreements illegal because of the anti-trust laws; the majority of the Court refused to press their holding beyond that point. 320 U.S. at pages 670, 671, 64 S.Ct. 268, 88 L.Ed. 376. I see no reason to extend it to an ordinary agreement of compromise, without taint of illegality, which is carefully embodied in a formal court decree.