**CRANE BOOM LIFE GUARD CO., Inc.,**
et al., Appellants,

v.

**SAF–T–BOOM CORPORATION et al.,**
Appellees.

No. 18209.

United States Court of Appeals
Eighth Circuit.

June 30, 1966.

Heiskell Weatherford, Jr., Memphis, Tenn., for appellants; Osro Cobb, Little Rock, Ark., on the brief.

Wayne W. Owen, Little Rock, Ark., for appellees.

Before VOGEL, Chief Judge, and MATTHES and MEHAFFY, Circuit Judges.

MATTHES, Circuit Judge.

This contempt proceeding grows out of a consent decree entered on May 31, 1962 in the United States District Court, Eastern District of Arkansas.

Following the issuance of a show cause order by Judge J. Smith Henley, the framing of the issues, and a plenary hearing, the District Court entered a decree on July 15, 1965 from which the appellants have perfected this appeal.

The history of this action is important. Saf-T-Boom, the assignee and owner of the so-called Thomas Patents Nos. 2,950,-016 and 2,989,194 commenced an action on April 6, 1962 to enjoin infringement of the patents. The defendants were Crane Boom Guard Co., Inc. and its principal stockholders, H. P. Merritt, Jr., S. A. Coffey and Arthur J. Thomas.[1]

After a partial trial of the infringement action on May 31, 1962, plaintiff and defendants, through their respective lawyers, compromised their differences, and agreed that a consent decree should be entered. The decree, prepared and approved by lawyers on both sides, was entered by the court on May 31 and provides:

"On this day, the trial of this cause having been partially finished, the plaintiff and defendants by and through their respective attorneys, E. M. Arnold and Shelby R. Blackmon, announced to the Court that the parties have agreed upon a consent decree in this cause.

"It is Therefore Considered, Ordered, Adjudged and Decreed by the Court in accordance with the agreement and consent of the parties announced to the Court, that the defendants, and each of them be and they hereby are permanently enjoined from infringing United States Patents Nos. 2,950,016 and 2,989,194.

"It is Further Ordered, Adjudged and Decreed that no damages be awarded to either the plaintiff or the defendants.

"It is Further Ordered, Adjudged and Decreed that the costs of this ac-

---

1. The Thomas Patents were developed by Arthur J. Thomas. They describe an insulating device for installation on the metal booms of machinery such as cranes and drilling apparatus, for the purpose of protecting the operators of the machinery from death or injury, resulting from the booms coming in contact with uninsulated high tension power lines.

tion be and they are hereby assessed against the plaintiff."

On November 13, 1962, Crane Boom Guard Co., Inc., H. P. Merritt, Jr., and S. A. Coffey filed a motion for relief under Rule 60(b) of F.R.Civ.P. After a full hearing, Judge Henley denied the motion. No appeal was taken from that order. Judge Henley also filed a supporting memorandum opinion which contains findings of fact. That opinion is a part of the record in this appeal, and from it we glean these pertinent facts.

The movants (Thomas, who was enjoined by the original decree, did not seek to have it set aside) asserted that the decree did not express the true settlement agreement, in that movants had not agreed to the entry of an injunction restraining infringement of the Thomas Patents; that there was "undue cooperation" between counsel for plaintiffs and movants' original attorney; that they did not become aware of the contents of the decree until shortly before the motion for relief was filed on November 13, 1962. It was developed at the hearing that Crane Boom Guard Co., Inc., the corporate moving party, had been dissolved. Upon motion and pursuant to applicable Arkansas Statutes, the directors as trustees, were included as moving parties.

Based upon undisputed evidence, Judge Henley found that the terms of the settlement of the infringement action were, (a) the corporate defendant (Crane Boom Guard Co., Inc.) should be dissolved; (b) stock in plaintiff corporation was to be issued to Merritt, Coffey, Thomas and

Shelby R. Blackmon;[2] (c) Merritt and Blackmon were to be elected to plaintiff's board of directors; (d) Merritt and Thomas were to be employed by plaintiff at salaries of $100.00 per week and $75.00 per week, respectively; (e) Coffey and Thomas were to assign to plaintiff certain interests in the Thomas Patents which they claimed individually; (f) neither side should be awarded damages and the costs were to be paid by plaintiff.

The terms of the settlement were effectuated and, as Judge Henley found, "apparently things were going smoothly until the latter part of July." On July 27, at a meeting of plaintiff's board of directors, C. H. Earl, president of plaintiff, announced that the cash position of the corporation was weak; that he was eliminating his salary and he requested Thomas and Merritt to accept salary reductions. Thomas acceded but Merritt refused. Later, Merritt ceased working for plaintiff and resigned from its board of directors. The hearing on the motions also developed that on September 5, 1962 Coffey had filed with the Patent Office, an application for a patent on an insulating device for crane booms. That application had not been acted upon at the time the motion was denied on January 11, 1963.

We turn now to the events which occurred subsequent to the denial of the motion for relief from the injunction. On August 13, 1963, the Patent Office issued Patent No. 3,100,575 to S. A. Coffey for "Crane Boom Life Guard."[3] Coffey and Associates organized a corporation known as Crane Boom Life

2. Mr. Blackmon, an attorney, represented defendants in the infringement action and had been president of the corporate defendant.

3. In regard to the Coffey patent, the District Court found in its memorandum opinion filed in the contempt action: "At the commencement of the trial of the current issues, which took place in May of this year, counsel for Life Guard conceded, and the Court now finds independently, that the Coffey device infringes the Thomas patents, if those patents are valid. In this connection the Court fully agrees

with Saf-T-Boom that the boom guard marketed by Life Guard is essentially a duplicate of the device described in the Thomas patents. Both of the devices accomplish the same end, by the same means, and in the same manner. As a matter of fact, apart from the possession of the Coffey device of a hook on the end of the guard, the devices are practically indistinguishable. And in the Court's estimation the hook on the Coffey device is not of sufficient importance to distinguish it from the Thomas device as far as patent law is concerned."

Guard Co., Inc., (Life Guard) and Coffey assigned his patent to that corporation. Thereafter, pursuant to arrangements with Life Guard, Lon and Pat Weyland manufactured the devices which were sold in competition with the boom guards sold by Saf-T-Boom.

The contempt action was instituted in April, 1964 by Saf-T-Boom. The order to show cause was directed to S. A. Coffey, Life Guard, Lon and Pat Weyland and Weyland Machine Shop. Later, C. H. Earl, president of Saf-T-Boom and Arthur J. Thomas were added as parties plaintiff. Mel Epperson, Freda Epperson, C. E. Haile, Pauline Haile, shareholders of Life Guard, Osro Cobb, the attorney who incorporated Life Guard, and C. H. Sansom, an independent contractor, who manufactured a boom guard in accordance with the specifications of the Coffey Patent, were added as parties defendant.

In the contempt trial, Life Guard and its allies, advanced the theory that the Thomas Patents were invalid, and that Saf-T-Boom is infringing the Coffey Patent. They denied that they were guilty of contempt, their position being that one cannot infringe an invalid patent.[4] Although the court received evidence on the question of the validity of the Thomas Patents and the Coffey Patent, it is abundantly clear that the case turned on the effect and scope of the 1962 consent decree. After discussing the doctrine of res judicata, the court arrived at the conclusion that "the consent decree bound Coffey, Merritt, and Thomas personally, as well as Crane Boom Guard Company, Inc. Life Guard is in direct privity with Coffey, and in the court's view that privity includes not only the corporation itself but also the corporation's founders and stockholders."

Although the court found that the Coffey device infringes the Thomas Patents, it refrained from adjudging Coffey or any other party guilty of contempt.[5] The court concluded, however, that Saf-T-Boom was entitled to have the original injunctive decree extended to include Life Guard. Accordingly, the court decreed "that Crane Boom Life Guard Company, Inc., which is now a party to this litigation, together with its officers, agents, employees, and servants and all other persons, firms, and corporations in privity with it, be, and they hereby are, perpetually restrained and enjoined from infringing [the Thomas Patents Nos. 2,950,016 and 2,989,194]." The same parties also were permanently enjoined from engaging in unfair competition with Saf-T-Boom.

Appellants pursue here the theme they unsuccessfully advocated in the trial court. Stripped of non essentials, the numerous points appellants set forth in their brief, demonstrate that they regard this proceeding as basically an infringement action involving the validity of the Thomas Patents and the Coffey Patent. They assert, in particular, that the court erred in not invalidating the Thomas Patents and in failing to find the Coffey Patent valid. We believe, as did the District Court, that appellants have missed the mark.

Contrary to the appellants' contention, the resolution of this controversy is not keyed to the question of whether the

---

4. This is not true as to the Weylands. They filed a response to the order to show cause, alleged that they were unaware of the injunction, that they had merely manufactured items for Life Guard, had discontinued such manufacturing by reason of the order to show cause and agreed to abide by all orders of the court. The Weylands did not appear as witnesses. Although we find no order dismissing them, they do not appear as appellants in this action and, seemingly, all appellants and appellees recognize that the Weylands are no longer parties.

5. Judge Henley logically reasoned: "Mr. Coffey is not a lawyer or even an engineer. He is a barber with a sideline interest in inventions, particularly boom guards. As a layman he may well have thought that if his device was novel enough to induce the Patent Office to patent it, he would be protected in its manufacture and sale as long as he stayed strictly within the claim of his patent. In the course of the May hearing of the case Mr. Coffey disavowed any intention to deliberately or contumaciously disobey any lawful order of this or any other court."

Thomas Patents are valid as to the general public. The very nature of this contempt action focuses attention upon the consent decree forming the foundation for the order to show cause. The only meritorious question for determination is whether, under the doctrine of res judicata, that valid decree operates to estop the parties who were defendants in that action, and their privies, from launching another attack upon, and from infringing, the Thomas Patents.

■ The general rule is that the doctrine of res judicata is applicable to a judgment rendered in a patent infringement case by a court of competent jurisdiction, and that such a judgment is binding and conclusive upon the parties to the action and those in privity with them. Minnesota Min. & Mfg. Co. v. Superior Insulating Tape Co., 284 F.2d 478, 485 (8 Cir. 1960), where Judge Van Oosterhout quotes from Kessler v. Eldred, 206 U.S. 285, 27 S.Ct. 611, 51 L.Ed. 1065: "If rights between litigants are once established by the final judgment of a court of competent jurisdiction those rights must be recognized in every way, and wherever the judgment is entitled to respect, by those who are bound by it." Siebring v. Hansen, 346 F.2d 474 (8 Cir. 1965) cert. den. 382 U.S. 943, 86 S.Ct. 400, 15 L.Ed.2d 352; Hopp Press, Inc. v. Joseph Freeman & Co., 323 F.2d 636, 637 (2 Cir. 1963); Vanderveer v. Erie Malleable Iron Company, 238 F.2d 510, 514 (3 Cir. 1956) cert. den. 353 U.S. 937, 77 S.Ct. 815, 1 L.Ed.2d 760; Winkelmann v. Calvert, 154 F.2d 1012, 33 C.C. P.A. 1206 (1946).

■ As a general proposition, a valid judgment or decree in a patent infringement action *entered by agreement or consent,* operates as res judicata to the same extent as a judgment or decree rendered after a contest. Siebring v. Hansen, supra; Hopp Press, Inc. v. Joseph Freeman & Co., supra; Kiwi Coders Corporation v. Acro Tool & Die Works, 250 F.2d 562 (7 Cir. 1958); Annot. 2 A.L.R.2d 516, 521 (1948); Annot. 97 L.Ed. 1188, 1191 (1953).

Appellants submit that because of the public interest in eliminating invalid patents the consent decree should not preclude them from launching an attack on the Thomas Patents, in this proceeding. Appellants remind us of Judge Learned Hand's admonition in Bresnick v. United States Vitamin Corporation, 139 F.2d 239, 242 (2 Cir. 1943) that an invalid patent "should not remain in the art as a scarecrow." *Bresnick*, a typical patent infringement action, presented issues and facts which distinguish it, and render Judge Hand's apt expression inapplicable here.

■ The Second Circuit again took note of this public interest aspect in the case of Addressograph-Multigraph Corp. v. Cooper, 156 F.2d 483 (2 Cir. 1946), and held that the doctrine of res judicata did not apply to the consent decree that had previously been entered. This declaration by the court is apropos to the issue before us:

"But even though we can only say that the consent decree left the issue of infringement without adjudication, nevertheless we think on grounds of public policy we ought to rule that in a decree, at least in one entered by consent, *either an adjudication of infringement, or a grant of some relief from which infringement may be inferred, is essential before any effect of res judicata can be given to it on the issue of validity.*" (Emphasis supplied). Id. at 485.

■ In *Addressograph*, supra the court concluded that since infringement was not adjudicated, it would be contrary to public policy to apply the doctrine of res judicata to a consent decree, in a subsequent attack on the validity of the patent. Our case is in harmony with the *Addressograph* rule. Although the consent decree, under consideration here, does not explicitly adjudge that the defendants had infringed the Saf-T-Boom device, that finding is implicit in the decree. Infringement was the key issue in the original suit; injunctive relief was sought, and pursuant to consent of the defendants, they were "permanently

**322**

enjoined from infringing United States patents Nos. 2,950,016 and 2,989,194." Surely the injunctive relief granted is "relief from which infringement may be inferred."

Appellants also contend that the consent decree is not binding on all of the appellants. They concede that it applies to, and binds Coffey and tacitly admit as much as to Life Guard. Their argument is that the other individual appellants were not in privity with Coffey and Life Guard.

■ A decree granting an injunction is binding not only on the parties to the action, but their officers, agents, servants, employees and attorneys, "and upon those persons in active concert or participating with them who receive actual notice of the order by personal service or otherwise." Rule 65(d) Fed.R.Civ. P., 28 U.S.C.A.; United States v. Ross, 302 F.2d 831, 834 (2 Cir. 1962); 1B Moore's Federal Practice ¶ 0.411, p. 1251 et seq.; see also 30A Am.Jur. Judgments § 148; Restatement, Judgments § 83.

■ Who are privies ordinarily presents a question of fact requiring examination of the circumstances of each case as it arises. 30A Am.Jur. Judgments § 399; 50 C.J.S. Judgments § 788. As hereinabove pointed out, appellants Mel and Freda Epperson, C. E. and Pauline Haile are shareholders of Life Guard. Appellant Osro Cobb is the attorney who, in concert with Coffey, brought about the incorporation of Life Guard. Appellant Sansom actually manufactured the device for Life Guard. The District Court found that the parties just named are in direct privity with Coffey and Life Guard. The record contains substantial evidence to support this finding—certainly it is not clearly erroneous.

In summary, the history of this litigation, and the posture of the instant proceeding in the District Court, reduced the issues to the narrow question of whether the consent decree of May 31, 1962 operates to conclusively adjudicate the rights of the parties, and those in privity with them, in the subject matter of the original infringement action. The interest of the general public in the Thomas Patents, and the rights of parties not affected and bound by, the consent decree, to attack the validity of such patents in a proper proceeding, are questions not germane in this case, and are not being determined.

From the record we are satisfied that the District Court properly concluded that the appellants are bound by the consent decree and that they had, in violation of the injunction, infringed the Thomas Patents.

We affirm.