GAMMON, INC., a California Corporation, doing business as Gammon Games, Plaintiff,

v.

Jerome H. LEMELSON and Synergistics Research Corp., a New York Corporation, Defendants.

Civ. A. No. 75–2168.

United States District Court, D. New Jersey.

Oct. 26, 1977.

Katzenbach, Gildea & Rudner by Phillip E. Griffin, Trenton, N. J., for defendants-petitioners, Lemelson and Synergistics.

Smith, Stratton, Wise & Heher by John N. Beidler, Princeton, N. J., for respondent Racinelli.

Madden & Madden by James J. Madden, Haddonfield, N. J., for respondent Hansen.

## OPINION

BARLOW, District Judge.

## I.  INTRODUCTION

This dispute centers on the validity of two patents, U.S. Pat. Nos. 3,032,345 and 3,857,566, held by Synergistics Research Corporation, a New York company, and Jerome H. Lemelson, a resident of New Jersey. The patents purport to protect the interests of Synergistics and Lemelson in certain types of "dart" games. Rather than employing traditional darts, however, the games in question use material-covered balls which adhere to boards covered with flannel.

## A.  PROCEDURAL HISTORY

This action was originally brought by Gammon, Inc., a defunct California corporation, against Synergistics and Lemelson. Gammon sought a judgment declaring U.S. Patents Nos. 3,032,345 and 3,857,566 invalid. Synergistics and Lemelson counterclaimed for patent infringement, trademark infringement, and unfair competition. This Court's subject matter jurisdiction is based on its diversity and patent powers. 28 U.S.C. §§ 1332, 1338.

On March 1st, 1977, this Court entered an order dismissing Gammon's complaint with prejudice, dismissing Synergistics' and Le-

melson's counterclaim for damages without prejudice, and granting Synergistics and Lemelson a default judgment on their counterclaim for injunctive relief.  On May 16th, 1977, this Court issued a temporary restraining order preventing Ennio Racinelli, the former president of the now defunct Gammon, and the John N. Hansen Co., a California corporation which purchased the assets of Gammon, from violating the March 1st injunction.  On May 20th, 1977, this Court held a hearing on Synergistics' and Lemelson's motions to hold Racinelli in contempt of the March 1st order and to enjoin Hansen from future violations of the March 1st order.  By August 29th, 1977, the parties had submitted proposed findings of fact, conclusions of law, and supporting memoranda.  These two motions are presently before the Court for decision.

## B.  FACTS

Based on the testimony elicited at the May 20th hearing, the parties' proposed findings of fact, and the other documents submitted in the case, the Court finds the following relevant facts to be established.

In early 1975, Gammon obtained a $250,-000 loan from the American State Bank, secured by the inventory and equipment of Gammon (Transcript of May 20, 1977, hearing, at 107; hereinafter cited as Tr.).  In the summer of 1976, approximately six months after instituting the present suit, Gammon defaulted on the loan (Tr. 108).  Hansen purchased the assets of Gammon from the Bank on September 24th, 1976 (Tr. 58–60, 65).  Hansen continued to manufacture and sell the Gammon games infringing on the patents of Synergistics and Lemelson (Tr. 65–66, 70–71).

Prior to its acquisition of Gammon's assets in September of 1976, Hansen knew of litigation involving the disputed patents. In early 1976, Hansen, as a seller of Gammon games, was sued by Synergistics in the United States District Court for the Southern District of California (Tr. 6, 73).  That suit was ultimately dismissed without prejudice (Tr. 6).  Hansen also knew that Gammon had filed the present action in this

Court (Tr. 72). Hansen, on the advice of counsel, decided not to pursue the Gammon litigation pending in this Court (Tr. 73–75). It is unclear whether Hansen knew, at the time of this decision, that Synergistics and Lemelson had filed counterclaims in the Gammon litigation (Tr. 72–79).

On January 21st, 1977, approximately four months after Gammon went out of business, Gammon's attorneys moved for an order relieving them as counsel for Gammon. On March 14th, 1977, this Court signed an order relieving the attorneys as counsel for Gammon retroactively to February 22nd, 1977. The order granting Synergistics and Lemelson a default judgment on their claim for injunctive relief was filed on March 1st, 1977. Thus, at the time of the default judgment, Gammon was not represented by counsel in this action.

Prior to being summoned to appear at the May 20th, 1977, contempt hearing, neither Hansen nor Racinelli had actual knowledge of the injunction granted on March 1st (Tr. 21, 112–13, 132–33).

During the week of May 15th, 1977, Hansen attended the New York Gift and Stationery Show. While at the trade show, Hansen exhibited the former Gammon game which this Court, in its March 1st default judgment, found to infringe upon Synergistics' and Lemelson's patents (Tr. 80). Racinelli, as a partner in the firm of Response Marketing, also attended the New York trade show (Tr. 81). While Racinelli was seen at the Hansen display a number of times, he was not acting on Hansen's behalf at the trade show (Tr. 93–94).

## II. THE MOTION TO HOLD RACINELLI IN CONTEMPT

■ Racinelli, as the president of Gammon games, is bound by the injunction issued by this Court on March 1st, 1977. Fed. R.Civ.P. 65(d). Racinelli cannot be held in contempt, however, unless he had notice of the injunction. The United States Court of Appeals for the Third Circuit has stated that before a person may be held in contempt for violating an injunction, "it must be proved that the alleged contemnor had

knowledge of the order which he is said to have violated". *In re Rubin,* 378 F.2d 104, 108 (3d Cir. 1967). *Accord, e. g., Wilson v. North Carolina,* 169 U.S. 586, 600, 18 S.Ct. 949, 42 L.Ed. 873 (1898); *In re Fidelity Mortgage Investors,* 550 F.2d 47, 51 (2d Cir. 1976), *cert. denied,* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977).

As this Court found above, see text at page 213, *supra,* Racinelli, at the time of the alleged violation, had no actual knowledge of the injunctive order granted on March 1st. In an attempt to avoid the effect of this fact, Synergistics and Lemelson assert, without the benefit of any authority, that "constructive knowledge" is a sufficient basis for a finding of contempt. Memorandum of Petitioners Synergistics and Lemelson in Support of Their Proposed Conclusions of Law, at 11. Synergistics and Lemelson argue that Racinelli had "constructive knowledge" because the order relieving Gammon's counsel was not entered until March 14th. Thus, Synergistics and Lemelson argue, Racinelli was represented by counsel when the order was entered on March 1st. *Id.* at 10–11.

Whether "constructive knowledge" is a sufficient basis for holding a person in contempt is, at best, questionable. *See* 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2956, at 557–59 (1973). In this case, however, even if such notice could be sufficient, Racinelli cannot be said to have received constructive notice of the March 1st order. The attorneys appearing in this case represented Gammon, not Racinelli. Thus, after Gammon went out of business, those attorneys could not be said to be representing Racinelli. In addition, while the order relieving Gammon's attorneys was not signed until March 14th, the order was retroactive to February 22nd. Consequently, even Gammon was not represented at the time the default judgment was entered on March 1st.

In light of the foregoing, it is the conclusion of this Court that Racinelli had no actual or constructive notice of the injunction. Consequently, Racinelli cannot be

held in contempt for violating the injunction's terms.[1]

### III. THE MOTION TO ENJOIN HANSEN

Synergistics and Lemelson contend that Hansen, as the successor to Gammon's assets, is bound by this Court's March 1st injunction. Hansen responds that it is not bound by the injunction because it was not a party to the original suit and it is not in privity with Gammon. Rule 65(d) states, in part, that:

> an injunction . . . is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

Fed.R.Civ.P. 65(d). Rule 65(d) has been interpreted as including, within the category of persons bound, those persons in privity with the parties. *Golden State Bottling Co. v. NLRB,* 414 U.S. 168, 177–80, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973); *Regal Knitwear Co. v. NLRB,* 324 U.S. 9, 14, 65 S.Ct. 478, 89 L.Ed. 661 (1945).

In the context of patent litigation, a few courts have found privity to exist where, after the beginning of a suit involving the validity of a patent, a non-party acquires the assets of a party. *E. g., Brunswick Corp. v. Chrysler Corp.,* 408 F.2d 335, 338 (7th Cir. 1969); *J. R. Clark Co. v. Jones & Laughlin Steel Corp.,* 288 F.2d 279, 280 (7th Cir. 1956), *cert. denied,* 368 U.S. 828, 82 S.Ct. 49, 7 L.Ed.2d 32 (1961); *Alb, Inc. v. Noma Lites, Inc.,* 231 F.2d 662, 663 (2d Cir. 1956). The rationale behind these decisions was expressed by the court in *J. R. Clark Co.* as follows:

> "If a third party may thus come into the acquisition of rights involved in pending litigation without being bound by the final judgment, and require a suit de novo in order to bind him, he might, pending

that suit, alienate that right to another with the same result, and a final decree bearing fruit could never be reached." *J. R. Clark Co.,* 288 F.2d at 280, *quoting G. & C. Merriam Co. v. Saalfield,* 190 F. 927, 932 (6th Cir. 1911). There are two facts present here, however, which distinguish this case from those in which privity has been found. First, Hansen, the successor, acquired the assets through a secured creditor rather than from a party to the suit. Second, the injunction issued in this case was the result of a default judgment.

Hansen contends that the intervention of the secured creditor, the Bank, destroys the privity relationship between Gammon and Hansen. Memorandum of Law in support of Proposed Conclusions of Law on Behalf of Respondent Hansen, at 7. Synergistics and Lemelson counter by stating that the presence of the Bank does not destroy the privity relationship between Gammon and Hansen because, under California law, "the bank did not take title to the collateral, but merely took possession upon default". Memorandum of Petitioners Synergistics & Lemelson in support of their Proposed Conclusions of Law, at 9.

■ Synergistics and Lemelson's California law argument is unpersuasive for three reasons. First, Synergistics and Lemelson have failed to show what relevance, if any, California law has to this Court's determination. It is true that this Court has subject matter jurisdiction over this dispute under both its diversity and patent powers. 28 U.S.C. §§ 1332, 1338; see text at page 212, *supra.* Thus, the *Erie* doctrine is at least arguably relevant, *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The questions presented by this case are, however, primarily ones of patent law. Diversity of citizenship is merely coincidental. While there are some situations in which federal courts, exercising nondiversity jurisdiction, will look to state law for guidance, *see, e. g., De Sylva*

---

1. Since we have found that Racinelli cannot be held in contempt because of a lack of notice, we need not reach his two other contentions: First, that the March 1st order is unenforcea-
ble; and, second, that his actions did not violate the order's terms. As to the validity of the order, however, see note 2, *infra.*

v. *Ballentine,* 351 U.S. 570, 580–81, 76 S.Ct. 974, 100 L.Ed. 1415 (1956); *see generally,* C. Wright, *Handbook of the Law of Federal Courts* § 60, at 284–85 (3d ed. 1976), Synergistics and Lemelson have not shown that this is such a case. Indeed, even if this were a traditional diversity case, state law might be irrelevant to the issue of privity because the presence or absence of privity in this case depends upon the interpretation given rule 65(d) of the Federal Rules of Civil Procedure. *See Hanna v. Plumer,* 380 U.S. 460, 469–74, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); *Wright, supra,* § 59, at 275–78.

Second, even if we were to apply state law, Synergistics and Lemelson have failed to establish that we should apply California law instead of the law of some other interested jurisdiction—such as that of New Jersey, the forum state. If we were to assume that *Erie* applies with full force to this case, we would have to determine whether under New Jersey conflicts rules California law would control. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Alternatively, if we were to assume that this is a case where the court may look to state law for guidance, we would be free to decide which state's law is applicable. *See De Sylva,* 351 U.S. at 581, 76 S.Ct. 974, *Wright, supra,* § 60, at 285.

Third, even if we were to apply California law, Synergistics and Lemelson have not shown that Hansen and Gammon would be found in privity under California law. Synergistics and Lemelson cite section 9503 of the California Commercial Code for the proposition that the Bank did not take title to the assets of Gammon. That proposition, however, is a negative inference drawn from that section's statement that possession flows to the secured creditor. The section is simply silent as to the status of title. *See* Cal.Comm.Code § 9503. Furthermore, even if we assume that title never vested in the Bank, Synergistics and Lemelson have not shown that the absence of title in the secured creditor has any significance to the question of privity between the debtor and the purchaser.

■ The appropriate course for this Court to follow is to determine, as a matter of federal law, what effect the intervention of a secured creditor has on the privity relationship between Hansen and Gammon. As indicated above, the primary rationale behind the privity doctrine, as applied to patent cases, is to prevent the evasion of judgments through the transfer of assets. *See* text at page 214, *supra.* The presence of a secured creditor renders that rationale largely inapplicable. Defaulting on a loan is usually not voluntary. In addition, a debtor usually would have little control over to whom the collateral, including any assets subject to pending patent litigation, is sold by the secured creditor. Thus, the fact that Hansen purchased Gammon's assets from the Bank points to a finding of no privity.

The second fact distinguishing this case from those in which privity has been found is that here the injunction was the result of a default judgment. Speaking of the effect of default judgments in general, the United States Court of Appeals for the Third Circuit has stated:

> In the absence of fraud or collusion, a default judgment is as conclusive an adjudication between the parties as when rendered after answer and complete contest in the open courtroom. The polestar is whether a reasonable method of notification is employed and reasonable opportunity to be heard is afforded to the person affected.

*Somportex Ltd. v. Philadelphia Chewing Gum Corp.,* 453 F.2d 435, 442–43 (3d Cir. 1971), *cert. denied,* 405 U.S. 1017, 92 S.Ct. 1294, 31 L.Ed.2d 479 (1972) (citations omitted).

In this case, Hansen, through its alleged privy Gammon, does not appear to have had a "reasonable opportunity to be heard". At the time the default judgment was entered, Gammon was no longer in existence. Obviously, Gammon was physically incapable of carrying on the litigation pending in this Court. Hansen may have been able to replace Gammon in this suit. However, Hansen, apparently due to counsel's feeling that

Hansen was not in privity with Gammon, see text at pages 212–213 *supra,* decided not to pursue this action. When making that decision, Hansen may not have known of the counterclaim for injunctive relief made by Synergistics and Lemelson. See text at page 213 *supra.* We cannot say that Hansen had a "reasonable opportunity to be heard" where, at the time of the default, its alleged privy was non-existent, it felt no obligation to appear, and it may have been unaware of the counterclaim.

■ Our conclusion that the default judgment entered in this case should not be given *res judicata* effect against Hansen is buttressed by the public policy favoring the adjudication on the merits of the validity of contested patents. In *Mercoid Corp. v. Mid-Continent Investment Co.,* 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376 (1944), the United States Supreme Court pointed out that:

> The grant of a patent is the grant of a special privilege . . . . It carries, of course, a right to be free from competition in the practice of the invention. But the limits of the patent are narrowly and strictly confined to the precise terms of the grant. . . . It is the public interest which is dominant in the patent system. . . . It is the protection of the public in a system of free enterprise which alike nullifies a patent where any part of it is invalid . . . and denies to the patentee after issuance the power to use it in such a way as to acquire a monopoly which is not plainly within the terms of the grant.

*Mercoid Corp.,* 320 U.S. at 665–66, 64 S.Ct. at 271 (citations omitted). In *Mercoid*

*Corp.,* the Court held that the doctrine of *res judicata* did not foreclose the litigation of issues which could have been raised in an earlier suit between the parties. *Id.* at 669–70, 64 S.Ct. 268. The Court stated that the public policy underlying the granting of a patent "is not 'at the mercy' of the parties nor dependent on the usual rules governing the settlement of private litigation". *Id.* at 670, 64 S.Ct. at 273.

The rationale of *Mercoid Corp.* suggests that this Court should deny enforcement of its March 1st injunctive order against Hansen. A determination that Hansen is bound by the order would, in effect, be a holding that the patents held by Synergistics and Lemelson are valid. Thus, Synergistics and Lemelson would be entitled, at the potential expense of the public, to the partial monopoly inherent in a patent, *see Mercoid Corp.,* 320 U.S. at 665, 64 S.Ct. at 268 without any judicial determination as to the patent's validity. We cannot say that the policies underlying the doctrine of *res judicata* —namely, judicial finality, *see generally* 1B *Moore's Federal Practice* ¶ 0.405[1] (2d ed. 1974)—requires such a result. *See Addressograph-Multigraph Corp. v. Cooper,* 156 F.2d 483, 485 (2d Cir. 1946) (consent decree not given collateral estoppel effect in patent case); *Moore, supra,* at ¶ 0.405[11].

■ In combination, the fact that Hansen acquired the assets of Gammon from a secured creditor and the fact that the injunction issued on March 1st was the result of a default judgment, lead this Court to conclude that Hansen is not the privy of Gammon. Thus, Hansen is not bound by the injunction issued against Gammon.[2]

---

2. Since we have found that Hansen is not the privy of Gammon, we need not reach Hansen's second argument: That this Court's March 1st order is unenforceable because of its failure to comply with the requirements of Fed.R.Civ.P. 65(d). We should point out, however, that if Hansen was Gammon's privy, this argument would not have freed Hansen from the effects of the March 1st order.

Rule 65(d) provides in part that: "Every order granting an injunction . . . shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained . . . ."

Fed.R.Civ.P. 65(d). Rule 65(d) cannot, however, be read in isolation. In particular, Rule 54(a) states that: "A judgment shall not contain a recital of [the] pleadings . . . ." Fed.R.Civ.P. 54(a). Taken together, Rules 65(d) and 54(a) place the court granting an injunction by default in a dilemma. In order to describe the acts enjoined, the court must, in effect, recite the prayer for relief and thereby violate Rule 54(a). In this case, we chose to follow the mandate of Rule 54(a). Consequently, the March 1st order, rather than recite the prayer for relief, referred to the pleadings.

## IV. CONCLUSION

Accordingly, in light of the foregoing, Synergistics' and Lemelson's motion to have Ennio Racinelli held in contempt is denied. In addition, Synergistics' and Lemelson's motion to have Hansen bound by this Court's order of March 1st, 1977, is denied. The attorney for Hansen will submit an appropriate order.

Even if that choice was wrong, however, the March 1st order would not be rendered unenforceable where, as here, enforcement is sought in the future. Orders which violate the requirements of Rule 65(d) are not necessarily void. *Pennsylvania R. R. Co. v. Transport Workers,* 278 F.2d 693, 695 (3d Cir. 1960); *see Bethlehem Mines Corp. v. United Mine Workers,* 476 F.2d 860, 863–64 (3d Cir. 1973); *see generally* 11 Wright & Miller, *supra,* § 2955, at 583. The issuing court retains the authority to modify the terms of injunctions. *System Federation No. 91, Railway Employers' Department v. Wright,* 364 U.S. 642, 646–47, 81 S.Ct. 368, 5 L.Ed.2d 249 (1961). While modifications are usually made to account for changes in law or fact occurring after the issuance of an injunction, *see id.,* at 649–50, they can also be made "for any other good reason". *Canal Authority v. Gallaway,* 489 F.2d 567, 578 (5th Cir. 1974). The alleged failure of the March 1st order to comply with the requirements of Fed.R.Civ.P. 65(d) would constitute a "good reason" for modification. Consequently, if Hansen was in privity with Gammon and if the March 1st order was defective, this Court would have, on its own motion, modified the order.